(Decided 10th April, 1874.)

SAMUEL EMMERT *vs.* J. F. SMITH, JOHN NICODEMUS and others.

*Individual liability of a Stockholder of a Manufacturing Company for its Debts, under sec. 52 of Art. 26 of the Code—This Liability enforcible in Equity.*

A manufacturing company, duly incorporated and organized, in order to pay off its debts and to create a working capital, issued bonds, of which some were sold in the market, and the residue hypothecated as collateral security for debts due by the company. A bill was filed against the company to enforce a mechanics' lien due by it to the complainants. A decree was passed directing all the property of the corporation to be sold for the payment of its debts, in the order of their priority, and trustees were appointed to make the sale. The property was sold and the sale duly ratified. The capital stock of the company had not been paid up. In the distribution of the proceeds of sale which were wholly insufficient to pay the aggregate of the claims as filed by the creditors of the company, it was HELD :

That from the claims of those who were stockholders in the company there should be deducted, in virtue of their individual liability under section 52 of Article 26 of the Code, for the debts of the company, the amount of their stock, and upon the balance only should they be allowed to participate equally in the fund with the other creditors.

The provisions of the Code (Art. 26, sec. 52,) making the stockholders of any corporation for manufacturing purposes individually liable to the creditors

of such corporation, are as applicable and obligatory in a Court of Equity as in a Court of Law, in any and every case where they can be enforced according to its rules of proceeding.

APPEAL from the Circuit Court for Washington County.

"The Antietam Manufacturing Company of Washington County," by deed of mortgage, dated the 8th of December, 1868, conveyed all its property, real, personal and mixed, to William T. Hamilton, Peter B. Small, George W. Smith, Sr., and Josiah F. Smith, with certain trusts and powers to secure the payment of certain bonds which said Company had resolved to issue to the amount of $65,000, the proceeds of which were designed to pay off the debts of said Company, and to create a working capital for it. The real estate conveyed by the mortgage had been conveyed to the Company by the appellant and his wife, by deed of the 5th of December, 1868. It had been previously sold to the Company by the appellant on or about the 15th July, 1867, and notes had been given for the purchase money; and the property had in the meantime been improved by a large mill designed and furnished for the manufacture of woolens, and other large improvements.

The bonds, secured by said mortgage were issued without delay and put upon the market, and the appellees became purchasers of bonds, at prices little below the par value, and from agents of the Company to the amount of $15,000 or $18,000. These were purchased, some in December, 1868, and others early in January, 1869, and the purchasers were absolute, unconditional holders of them.

The remainder of the bonds were hypothecated and were in the hands of third parties, creditors of the company, as collateral security for their claims.

After these proceedings a bill was filed on the 1st of April, 1869, on the equity side of the Circuit Court for Washington County, under Article 61, section 24 of the

Code, by Morris, Tasker & Co., against the said Antietam Manufacturing Company of Washington County, the grantees in said mortgage, and certain holders of mechanics' liens against the Company, to enforce the payment of a mechanics' lien due by the Company to the complainants, and binding certain of its improvements. These proceedings were conducted to a decree, which was passed 1st of July, 1869, directing all the property of said corporation, real and personal, to be sold for the payment of all of its debts in the order of their priority, and appointing William T. Hamilton, Andrew K. Syester and Albert Small, trustees, to make said sale. The trustees sold all of said property 7th December, 1869, and reported the sale, but the same was set aside on exceptions filed, and testimony taken, for inadequacy of price. A second sale was made 7th June, 1870, which was ratified, no exceptions having been filed to it.

The first payment of the purchase money was audited August 23, 1870. This audit, No. 1, simply ascertained and allowed the trustees' commissions and other expenses, and left a balance of $10,331.98 in the hands of the trustees, with which they were charged in audit No. 2, filed 31st of August, 1870. By Account No. 2, the above balance was distributed first to mechanic lien holders, and what remained among all the bondholders equally. To this account the appellant filed exceptions, September 24th, 1870, asserting a priority over all claims as vendor of said real estate to the corporation. Proof was taken by the auditor in reference to the exceptions, and on the hearing the Court overruled the exceptions and disallowed the vendor's lien. From this order, passed on the 24th of December, 1870, no appeal was taken.

Thereupon account No. 3, was stated in compliance with the directions of the Court in its order of December 24th, 1870, distinguishing those persons who held bonds absolutely by purchase, from those who held bonds as

collateral security for debts due them by the corporation;
to the former the auditor allowed the amount as expressed
on the face of the bonds respectively held by them, with
interest thereon to 1st of May, 1871; to the latter, the
amount actually due them by the company, with interest
thereon to the same date, and the fund was distributed
accordingly, no notice being taken, or deduction made of
the stock severally held by two of them in the company.
The fund distributed was insufficient to pay the aggregate
of the claims filed.    To this account exceptions were filed
by the appellees, being absolute bondholders by purchase.

On the hearing of these exceptions together with the
proof taken thereunder, the Court decided that the col-
lateral bondholders, being creditors of the company, and
also stockholders therein, should first have their stock by
virtue of their individual liabilities deducted from their
claims against the Company, and that upon such *balances
only*, secured by collateral bonds held by them respectively,
they should stand upon a footing with the other or abso-
lute holders of bonds by purchase.    Account No. 3,
re-stated, was in pursuance of this view and order of the
Court.    To this the appellant, who was a stockholder, and
who likewise held bonds of the company, as security for
its indebtedness to him, excepted, but the Court overruled
the exceptions, and ratified account No. 3, as re-stated.
From this order of the Court the present appeal was
taken.

The cause was argued before BARTOL, C. J., STEWART,
GRASON, MILLER and ROBINSON, J.

*Attorney General Syester*, for the appellant.

There is no authority or justice in confiscating in the
way the Court has done, the claim of Emmert against the
Company.    He is not here suing the stockholders.    And
the doctrine that where a stockholder creditor, sues a stock-

holder on his individual liability, the creditor must sue only for such balance as remains after deducting his stock, has no application here. For there the creditor is as much bound to pay to the extent of his stock, as the defendant is to pay to the extent of his stock. But here is a proceeding directly against the Company itself. The doctrines of set-off or recoupment cannot apply here. This is not a legal, neither is it an equitable set-off, within the meaning of the law, as defined by standard writers and judges. 2 *Story's Eq. Juris.*, sec. 1435, *note* 1, 1437, *note* 1400, 4, 1438; *Waterman on Set-off*, sec. 379, *note A.*

The decision of the Circuit Judge in effect, requires Emmert to contribute to the payment of the Company's debts, to the extent of the whole amount of his stock. There is error in this.

1st. Because, before contribution can be required or enforced, the following requisites are *indispensable:* The entire assets of the Company should be before the Court. Not simply the proceeds of the property sold, and which was covered by the mortgage. *Mathews, et al. vs. Albert, et al.*, 24 *Md.*, 527.

All the parties liable to contribution must be before the Court. *Sto. Eq. Pl.*, sec. 176. All the debts of the Company ought to be ascertained. Not one of either of these elements on which to decree contribution was before the Court. It does not appear that the Company had no other property, nor that there were no debts due it, nor that all the shares of stock sold were paid up. Indeed, the contrary appears.

A stockholder is liable only for such debts as accrued whilst he was such stockholder, until the entire capital stock fixed by the charter, has been paid up; third parties are presumed to contract somewhat on the responsibilty of the stockholders, themselves, to the extent of their subscriptions; but not after they cease to be stockholders. *Hager vs. Cleveland & Bassett*, 36 *Md.*, 493; *Norris vs. Wrenschall*, 34 *Md.*, 501.

In this case, Emmert on the 5th of Feb. 1869, assigned $19,000 of his stock. The *bona fides* of that assignment is not questioned. But by the auditor's account, it is plain that bondholders were distributed to, who became creditors of the Company, became holders of these bonds *after* Emmert *assigned his stock.*

But can the holders of these bonds, resort to Mr. Emmert in this way for payment, even supposing the assets of the Company are so far insufficient, as to require the whole amount of his stock for their payment? Not one of these bonds was taken upon the faith of the stockholders' individual liability, but upon the faith of the pledge of the company's property, named in the mortgage. They accepted these bonds upon the strength of the mortgage—the value of the property. They relied on that, looked to that; it was their express contract.

The general creditor of the company has a right to look to this responsibility of the stockholder; and it is his only fund of payment as this case stands; for the bonds represent more than the property mortgaged, brought; and the general creditor could not go there for payment.

But by this decision, the Court without any inquiry into the debts, assets, &c., of the company, take away from the general creditor, so much of his sole and only remedy, and put it into the hands of the lien holder.

*H. H. Keedy* and *D. Weisel,* for the appellees.

The order appealed from in this case is simply one distributing among those entitled, the proceeds of the sale of the property of the company, after the complainants who had prior liens were satisfied. The appellees holding bonds by purchase from the company, presented their bonds as liens next in priority; Mr. Emmert presented his also, who was a stockholder to the amount of $22,500, and was so when these bonds were issued; was a director, cognizant of all the proceedings of the company, and participating in

the creation of its debts, and clearly liable to creditors to the amount of his stock. That he should be made to set off or deduct the amount of his stock from his own claim before he could be allowed to participate in the distribution, was both just and equitable, and in conformity to all the adjudications in cases of this kind. He would be liable to the appellees as a stockholder, and to abate the amount of his liability in this case avoids circuity of action and works no injustice to the stockholder. His claim is paid *pro tanto* by his own liability. *Matthews, et al. vs. Albert, et al.*, 24 *Md.*, 535, 536.

A stockholder creditor has not equal equities with other creditors until his debt against the company exceeds his individual liability. Then, and not till then, can he sue another stockholder for the excess.

STEWART, J., delivered the opinion of the Court.

The Antietam Manufacturing Company of Washington county, not having sufficient means to meet all of its liabilities, its property has been sold under a decree for their payment. The contest over the proceeds of the sale, is between the parties here, as creditors, as to their proper application between them.

The capital stock of the Company, not having been paid up, and the appellant claiming as creditor, but having been a stockholder in the Company, and participating as a director in its operations, and thus liable, under the 52nd sec. of 26th Art. of the Code, to the creditors, to the amount of his stock, objection has been made by them to his equal participation in this fund.

Without going into further detail of the proceedings, the chief question for our review, is whether he is entitled in this proceeding to equal distribution with the appellees, who are creditors, but not stockholders in the Company; or, in other words, ought the appellant's claim to be

reduced to the amount of his stock, as an equitable set off, for the benefit of the appellees?

The provisions of the Code are clear, that the appellant is responsible as a stockholder, under the circumstances, to the extent of his stock, for all debts and contracts made by the Company, of which he was a stockholder, until the whole amount of the stock has been paid in. In a suit at law by the appellees or creditors against the appellant, as a stockholder, he is unquestionably liable to the amount of his stock. *Matthews, et al. vs. Albert, et al.*, 24 *Md.*, 527 ; *Norris vs. Johnson*, 34 *Md.*, 485, *and Norris vs. Wren-schall*, 34 *Md.*, 492 ; *Booth vs. Campbell*, 37 *Md.*, 522.

But the counsel for the appellant insists, that as this is a proceeding originating against the Company itself, in a Court of Equity, and the proceeds of sale under its decree are to be distributed by such Court amongst the creditors, the liability of the appellant ought not to be enforced, as the matter stands, but that the entire assets of the Company ought to be administered ; and other stockholders, equally liable with the appellant, made parties, and compelled to contribute, so as to render justice between him and such stockholders, without resort to a distinct trial, for the settlement of their relative equities. Such interposition of the Court would give unnecessary complexity to the proceedings, and be attended with useless delay, and so far from giving to the general creditor, in a contest between him and the stockholder creditors, the benefit of the remedy designed by the law, against a stockholder, would, in effect, require him, for the special benefit of the stockholder creditor, to abide a settlement between other parties, liable as between themselves, it may be, to contribute to the payment of the debts of the Company. In the distribution of this fund in equity, the creditors are *severally* actors, and each entitled to set up any equitable defence against another. The provisions of the statute, without undertaking to prescribe any specific mode of

recovery, make the stockholders of the Company *individually* responsible to the creditors, and were designed for the relief of the creditors, and to afford them an ample and expeditious remedy before any forum competent to administer the law. These provisions are as applicable and obligatory in a Court of Equity as at law, in any and every case where they can be enforced, according to its rules of proceeding.

Whether a Court of Equity in the exercise of its just discretion, and conformably to its form of proceeding, can afford to a creditor against a stockholder, the benefit of the law, must be determined from the circumstances of the case.

Where a fund like this is in equity for distribution, and creditors appear, asserting their relative claims to a distributive portion, some occupying the relation of *stockholder debtors*, under the statute, to other creditors of the Company, to an amount equal to their stock, for all debts and contracts created while they were stockholders, the Court would not be carrying out the letter or spirit of the law regulating the rights of creditors and imposing responsibility upon stockholders, to postpone the distribution until measures could be matured compelling other stockholders of the Company to contribute to the payment of debts of the Company.

The appellant, as a stockholder, is only answerable for the debts or contracts of the Company created whilst he was a stockholder, and cannot be held to account for subsequent claims accruing after the assignment of his stock.

It appears from the information furnished by the auditor's report and statement of the account and the proceedings, that the claims of the creditors who are entitled to hold the appellant responsible, to the extent of his stock, are sufficient to absorb the balance of this fund for distribution. If the creditors who became such after the assignment of the appellant's stock were excluded, so far

as we can discover, it would only give to the creditors who are entitled under the statute to claim the benefit of his stock debt, a larger dividend. The correction of the auditor's account, if erroneous, in not making the distinction between the creditors of the Company prior or subsequent to the appellant's assignment of his stock, could not benefit him.

If there is error in fact on that ground, the only parties prejudiced thereby have not appealed, and the appellant could not be benefitted by remanding the case for correction of the account in such particular.

The order of the Circuit Court of April 4, 1872, overruling the exceptions of the appellant and ratifying the auditor's report, No. 3, must be affirmed.

*Order affirmed.*

(Decided 22nd April, 1874.)