## GILCHRIST *et al.* v. HELENA, HOT SPRINGS & S. R. Co. *et al.*

### (*Circuit Court, D. Montana.* February 25, 1892.

1. CORPORATIONS—INSOLVENCY—UNPAID SUBSCRIPTIONS—SET-OFF.

   Where there are a number of different liens upon the property of an insolvent railway company, a stockholder who holds a judgment against the company cannot, of his own motion, or at the instance of one lien-holder, set off the amount thereof against unpaid subscriptions on his stock, since the subscriptions, being a trust for all creditors according to their equities, might be absorbed, in whole or in part, by liens found to be superior to his judgment.

2. SAME.

   A stockholder in an insolvent corporation owes nothing on unpaid subscriptions, except so much thereof as may be necessary, together with the other assets, to satisfy the creditors; and hence, before this sum is ascertained and demanded of him, he cannot be compelled to set off the whole unpaid subscription against a judgment held by him against the corporation. *Emmert* v. *Smith*, 40 Md. 123, distinguished.

In Equity. Bill by Thomas Gilchrist and others, partners, doing business as Gilchrist Bros. & Edgar, against the Helena, Hot Springs & Smelter Railroad Company, the Farmers' Loan & Trust Company, and others, to enforce the lien of a judgment. The Northwestern Guaranty Loan Company, having intervened, filed a cross-bill, and the hearing was upon a demurrer thereto. Demurrer sustained. For former report, see 47 Fed. Rep. 593.

*Walsh & Newman*, for plaintiffs.

*Toole & Wallace*, *A. K. Barbour*, and *H. G. McIntire*, for defendants.

KNOWLES, District Judge. Plaintiffs obtained two judgments against the defendant Helena, Hot Springs & Smelter Railroad Company, a corporation organized under the laws of Montana. These judgments, it is claimed, were liens upon the property of said railroad company by virtue of the provisions of section 707, Comp. St. Mont. p. 824. Plaintiffs then brought an action in equity to have their said liens satisfied out of the said property, and to be declared a prior lien to that of the Farmers' Loan & Trust Company, which they made a party to the action. Many other parties who have judgments against said railroad company, claimed to be liens on the property of the same, were made parties. It was prayed, among other things, that a receiver be appointed, etc. The Northwestern Guaranty Loan Company, a corporation organized under the laws of Minnesota, and Erastus D. Edgerton, asked to be allowed to intervene in said action. This petition was granted. The cause was removed from the state court to this. The Northwestern Guaranty Loan Company filed its bill of intervention, setting forth that the Helena, Hot Springs & Smelter Railroad Company made, executed, and delivered to the Farmers' Loan & Trust Company, as a trustee, a mortgage upon its property to secure the payment of some 150 bonds, of $1,000 each, of said railroad company; that 100 of said bonds, amounting to $100,000, were sold to said intervener, who is now the owner and holder thereof; that said railroad company has failed to pay said bonds, or the interest thereon, according to their terms, and in accordance with the terms of said mortgage; that the said trustee, the Farmers' Loan & Trust Company, has failed to enforce the rights of the said intervener in the premises, although requested by it in writing, and the proper security for costs and expenses offered, as is required in the mortgage deed aforesaid. Intervener asks to have the said mortgage foreclosed, and the property sold to satisfy said bonds. The bill, also, among other things, sets forth that, in organization of the said railroad company, W. E. Cullen, H. B. Palmer, C. G. Evans, and W. H. Hunt subscribed each, to the capital stock of said company, the sum of $33,750, and one R. C. Wallace the sum of $15,000; that the stock subscribed by the said Hunt was for the use and benefit of one William Muth, who is now the owner and holder thereof, to-wit, 337½ shares of said stock; that no payment has been made on said stock subscription. The bill further shows that certain judgments against said railroad company held by W. C. Whipps and W. E. Cox and George Green were purchased by them from the parties who obtained them, for William Muth, who is now, in fact, the owner of the same, and claims them as a lien upon the property embraced in the mortgage. These claims amount to near $3,000. It is alleged that the said railroad company is insolvent. The bill asks that these claims be canceled or offset by an equal sum of the amount due by said Muth on his unpaid stock subscription. The said Muth demurred to this portion of said bill of intervention, and the question is presented as to whether said unpaid stock subscription should be reduced by the amount of said judgments; that is, so much thereof be offset against said judgments.

The money which the said Muth owes said railroad company for unpaid stock subscription is a trust fund, which should be paid into the treasury of the company for the benefit of all the creditors. The debts which the company owes to said Muth on these judgments is not of this character. In the case of *Sawyer* v. *Hoag,* 17 Wall. 610, the supreme court said, in a case in which the plaintiff, Sawyer, sought to compel the defendant, Hoag, as an assignee in bankruptcy of an insolvent insurance company, to allow, as a set-off, a certain claim which he held against the insurance company on the amount due from him on a subscription of stock to said company:

"The debts must be mutual,—must be in the same right. The case before us is not of that character. The debt which the appellant owed for his stock was a trust fund, devoted to the payment of all the creditors of the company. As soon as the company became insolvent, and this fact became known to the appellant, the right of set-off for an ordinary debt to its full amount ceased. It became a fund belonging equally in equity to all the creditors, and could not be appropriated by the debtor to the exclusive payment of his own claim. It is unnecessary to go into the inquiry whether this claim was acquired before the commission of an act of bankruptcy by the company, or the effect of the bankruptcy proceedings. The result would be the same if the corporation was in the process of liquidation in the hands of a trustee, or under other legal proceedings. It would still remain true that the unpaid stock was a trust fund for all the creditors, which could not be applied exclusively to the payment of one claim, though held by a stockholder who owed that amount on his subscription."

This rule was affirmed in *Scammon* v. *Kimball,* 92 U. S. 367; *Scovill* v. *Thayer,* 105 U. S. 152; and *Patterson* v. *Lynde,* 106 U. S. 519, 1 Sup. Ct. Rep. 432.

It is evident, from these decisions, that Muth could not himself offset the amount of these judgments against him for unpaid stock due from him to said railroad company. Now, can the company, or a creditor of the company, having a lien upon its property, compel him to credit the amount the company owes him upon these judgments, to the extent of the same? In order that one debt may be offset against another, the debts must be in the same right. But the supreme court, in the cases referred to above, say they are not in the same right. If Muth should be required to pay his subscription of stock to the said railroad company, the amount so paid might not be devoted to paying his debts against the company. It would be devoted to paying the claims of those who had the right to be first paid after the property of the company is exhausted, or to all the claims *pro rata.* There are in this case quite a number of judgments claimed to be liens against the property of the railroad company. Suppose it should turn out that there was not enough property belonging to the railroad company to satisfy the liens which are prior to those it is alleged the defendant Muth owns, then would not the subscription of stock of Muth be devoted to first paying off these liens under the decisions of the supreme court above referred to? I think this must be true. The rule to be established in such a case must be a general one, and apply to all similar cases. If it should appear that there might be

cases in which the unpaid stock, if paid to the company, would not go to liquidating the claims of this stockholder who has not paid his subscription, I am sure there would be no right in any one to have the sum due the company to any extent set off against the debts such company might owe such stockholder. There might be cases where equity would decree such a set-off. If the party owning the claims against the company was notoriously insolvent, and there would be no chance for the unpaid subscription of stock of such a stockholder being liquidated, and hence no fund could arise for the paying of the claims which would be prior to his claims, then a court of equity might decree that these claims of such unpaid stockholder should be treated as a payment upon the unpaid stock subscription. Under such circumstances, a joint claim is sometimes allowed to be a set-off against an individual claim, although they are not held in the same right. Story, Eq. Jur. § 1437, 1437a. How far a court of equity might go, if such a case were presented, I am not now prepared to say. But no such case is here presented. It is not alleged that William Muth is insolvent.

It seems to be the approved practice in the courts of the United States for a creditor of a corporation, who has an unpaid claim against the same, and the property thereof is exhausted, to bring an action in the nature of a creditors' bill to compel a stockholder to pay in his unpaid subscription of stock. *Brown* v. *Fisk*, 23 Fed. Rep. 228; *Patterson* v. *Lynde*, 106 U. S. 519, 1 Sup. Ct. Rep. 432. And this action may be brought against one stock subscriber. *Hatch* v. *Dana*, 101 U. S. 205. This bill is allowed to be filed only after a judgment against the corporation, or when it is known to be insolvent. Then the suit is brought in such a way as to allow all parties who are creditors of the corporation to come in and be parties to the action, and share in its results. It would seem that, in this case, the intervener contemplated some such relief as is provided in a creditors' bill, and yet there is no provision for other creditors to join in asking such relief. There is no allegation that there has been any demand on Muth to pay his unpaid subscription of stock. Undoubtedly this demand can be made by a court of equity in behalf of the creditors, but before any demand can be made there must be ascertained, approximately, at least, how much Muth would be required to pay on his subscription. In the case of *Scovill* v. *Thayer, supra*, the supreme court said:

"The defendant owed the creditors nothing, and he owed the company nothing, save such unpaid portion of his stock as might be necessary to satisfy the claims of the creditors. Upon the bankruptcy of the company, his obligation was to pay to the assignees, upon demand, such an amount upon his unpaid stock as would be sufficient, with the other assets of the company, to pay its debts. He was under no obligation to pay anything until the amount necessary for him to pay was, at least, approximately ascertained. Until then his obligation to pay did not become complete."

There is no allegation that in any way would show that it is yet ascertained how much Muth would be called upon to pay on his unpaid subscription of stock. The requiring him to set off the claims he has

against the company in part liquidation of his subscription of stock would, in effect, be requiring him to pay the company so much of his subscription. I do not think the time has come when this can be done.

It is claimed that the case of *Emmert* v. *Smith*, 40 Md. 123, is an authority in point justifying the proceedings sought in this case. In that case the property of the corporation had been converted into money under a sale made by trustees in pursuance of an order of court, and the contest was as to the distribution of the proceeds among the creditors. In that case the court says:

"In the distribution of this fund in equity the creditors are severally actors, and each entitled to set up any equitable defense against each other. The provisions of the statute, without undertaking to prescribe any specific mode of recovery, make the stockholders of the company individually responsible to the creditors, and were designed for the relief of the creditors, and to afford them an ample and expeditious remedy before any forum competent to administer the law."

There is no statute in Montana which makes the stockholders of a railroad corporation individually liable to the creditors of the same for unpaid subscriptions of stock. In the case of *Terry* v. *Little*, 101 U. S. 216, the supreme court say: "The individual liability of stockholders in a corporation is always a creature of statute. It does not exist at common law." It will be seen that, while that was a different proceeding from that now presented in this case, there was also a different element for consideration, namely, the individual liability of a subscriber of stock to a creditor. It would seem, also, that in that case the court did not consider the precise point presented in this,—namely, the right to have an individual claim against a corporation set off against an unpaid subscription of stock,—but whether this could be done without calling in all of the other stockholders who were indebted to the company for unpaid subscriptions of stock, and the liability of each determined, and only the amount each was required to contribute and pay in so as to liquidate the debts of the company determined. The court held that it could. That case, however, I do not consider in point in this case. For these reasons I think the demurrer should be sustained; and it is so held.