ALFRED L. MILLER et al.

*v.*

JOHN A. WILLETT et al.

[Decided October 20th, 1905.]

1. A bill of complaint, which states that the complainants jointly have rights of action against several defendants, no one of whom is liable in whole or in part for the other's debt; which asks neither accounting nor discovery, but demands simply the payment by each defendant separately of a definitely ascertained sum of money; which shows no joint or related liability between the defendants; which alleges neither the breach of a trust, the perpetration of a fraud, nor any other ground for equitable relief, is demurrable for want of equity.

2. Such a bill is multifarious in that it subjects each unrelated defendant, who the bill shows is entitled to defend separately, to the embarrassment of defending a suit in which others are joined as defendants, with whom he has no apparent common interest.

3. A bill which seeks to enforce a statutory obligation in the nature of a guaranty of a debt, by compelling the payment of sums largely in excess of the amount necessary to satisfy that debt, is demurrable for want of equity.

On demurrers to bill of complaint.

The bill of complaint in this cause is filed by Alfred L. Miller and more than four hundred and fifty other persons, who allege themselves to be residents in the State of Colorado, and to be all of the depositors in and creditors of the State Bank of Monte Vista, in the county of Rio Grande, in that state.

The defendants are John A. Willett and nineteen others, who are in the bill alleged to be the only shareholders in said bank, and persons liable for the debts, within the jurisdiction of this court.

The bill of complaint alleges that the State Bank of Monte Vista, since the 11th day of August, 1890, has been and still is a corporation organized under the laws of the State of Col-

orado, having a capital stock which, as increased, is $80,000, divided into eight hundred shares of the par value of $100 each; that the said bank conducted, in three different places in Colorado, a general banking business until June 15th, 1899, when it became insolvent, and on that day made an assignment under the laws of the State of Colorado, and appointed one Norman H. Chapman as assignee; that the assignee qualified and took possession of the property and choses in action of the bank, converted them into money and paid them out to the creditors of said bank, and that nothing remains for distribution, all the property and choses in action having been disposed of, resulting in the payment by said assignee upon the indebtedness of the bank as of December 15th, 1899, of fifteen per cent., and of December 1st, 1901, of four and a half per cent., and that if any further moneys are recovered for said bank creditors it must be from the stockholders upon their stock liability; that the complainants deposited in that bank at times while the defendants were shareholders therein, and that the balances of complainants' deposits remaining in the bank at the date of its failure were the sums stated in the list set forth in the bill of complaint, amounting in the aggregate to $66,115.93; that the present total indebtedness of the said bank (after crediting the payments made thereon by the assignee, amounting to $11,-646.90) amounts to $54,469.03, upon which the complainants claim interest, at the rate of eight per cent. per annum, from June 15th, 1899, being the rate of interest allowed by law in the State of Colorado.

The complainants further allege that the laws of the State of Colorado at the time of the organization of the bank provided as follows: (*Laws of Colorado 1885 p. 264 § 1.*)

"Shareholders in banks, savings banks, trust, deposit, and security associations, shall be held individually responsible for debts, contracts and engagements of said associations in double the amount of the par value of the stock owned by them respectively."

That said law has been at all times since the organization of the bank and now is in full force and effect.

The bill of complaint further alleges that when the complainants became creditors of said bank the defendants in this bill were shareholders therein, and continued to be shareholders at the date of said bank's assignment, and that the number of shares held by each defendant is as follows:

John A. Willett, five shares; Robert D. Kent, five shares; Frederick Lowe, five shares; William P. Aldrich, thirty shares; Edo Kipp, five shares; Anna Basch, forty shares; Moses E. Worthen, thirty shares; Estate of C. Aldrich, thirty shares.

The bill of complaint further alleges that said Edo Kipp died February 16th, 1899, seized of certain lands, &c., leaving a last will whereof Arrianna Van Houten and Ella K. Goodlatte were appointed executrices; that they probated said will on March 1st, 1899, before the surrogate of Passaic county, and undertook the administration of the estate of said decedent; that said Kipp left him surviving as his heirs-at-law and devisees of his lands, &c., Arrianna Van Houten, Ella K. Goodlatte, Peter E. Kipp, John M. Kipp and Mary Kipp; that said Peter E. Kipp has since died, and the complainants charge that said Arrianna Van Houten, Ella K. Goodlatte, John M. Kipp, John E. Kipp and Mary Kipp, heirs and devisees of said Edo Kipp, are severally and individually liable for the obligation of said Edo Kipp under the will, as above stated.

The bill of complaint further alleges that Anna Basch departed this life on November 24th, 1903, seized of certain lands, &c., testate, and by her last will appointed Henry L. Basch, Isaac Basch and Marion Feeder executors of her will, who on December 5th, 1903, proved the same before the surrogate of Passaic county, and took upon themselves the burden of the execution thereof; that said Anna Basch left her surviving as her heirs-at-law and devisees of her lands, &c., Isaac Basch, Marion Feeder, James S. Basch, Carrie Basch, Matilda Basch and Anna J. Basch, who, the complainants charge, are severally and individually liable for the obligation of said Anna Basch, under the will aforesaid.

The bill further alleges that said Moses E. Worthen departed this life December 26th, 1897, testate, seized of certain lands,

&c., and by his last will appointed the Passaic Trust and Safe Deposit Company executor and trustee, which company on January 7th, 1898, probated said will before the surrogate of Passaic county, and undertook to execute the same, and that said Moses E. Worthen left him surviving as his heirs-at-law and devisees of his lands, &c., Irene C. Worthen, now Irene C. Mansur; Harry Worthen, Frank Popple, Jr., Bessie Popple, and the Passaic Trust and Safe Deposit Company, trustee, and the complainants charge that the said heirs and devisees are severally and individually liable for the obligation of said Moses P. Worthen, as above stated.

The bill of complaint further alleges that William P. Aldrich, upon his individual responsibility, but in the name of the "Estate of C. Aldrich," subscribed for thirty shares of the stock of said bank, and was a shareholder therein when the complainants became creditors and at the time of the assignment made by said bank to the extent of thirty shares, and the complainants charge that said William P. Aldrich, upon subscribing to said stock, became and was individually liable for the obligation entered into as above named, and agreed to assume, and did assume, the liability for the debts of said bank (in case of insufficiency of the corporate assets to liquidate such indebtedness) in double the amount of the par value of the stock subscribed for in the name of "Estate of C. Aldrich," and the complainants charge that said William P. Aldrich is indebted to complainants in double the amount of the par value of said stock.

The bill further alleges that, by virtue of the statute of the State of Colorado, pursuant to which said State Bank of Monte Vista was incorporated, each and every stockholder of said bank agreed to assume, and did assume, liability for the indebtedness of said bank (in case of deficiency of its assets to liquidate its indebtedness) in double the amount of the par value of his stock, and the complainants charge that the defendants, by virtue of the provisions of said statute, are severally and individually indebted to the complainants in double the amount of the par value of the stock in the bill of complaint set forth as being held by them respectively.

The bill prays that the defendants John A. Willett, Robert E. Kent and Frederick Lowe may be decreed to pay to the complainants the sum of $1,000 each; the defendant William P. Aldrich the sum of $12,000; the defendants Arrianna Van Houten, Ella K. Goodlatte, John M. Kipp, John E. Kipp and Mary Kipp, as heirs-at-law of Edo Kipp, deceased, the sum of $1,000; the defendants Isaac Basch, Marion Feeder, James S. Basch, Carrie Basch, Matilda Basch and Emma J. Basch, as heirs-at-law and devisees of Anna Basch, the sum of $8,000; the defendants Irene C. Mansur, Harry Worthen, Frank Popple, Jr., Bessie Popple and the Passaic Trust and Safe Deposit Company, trustee, as heirs-at-law and devisees of Moses E. Worthen, deceased, the sum of $6,000, and for further relief, &c.

Seven separate demurrers have been filed to the bill of complaint. One by John A. Willett, another by Robert B. Kent, another by William P. Aldrich, another by Fred. Lowe, another by the Passaic Trust and Safe Deposit Company, trustee; another by Isaac Basch, Marion Feeder, James S. Basch, Carrie Basch and Emma J. Basch, and another by Arrianna Van Houten, Ella K. Goodlatte, John M. Kipp, John E. Kipp and Mary Kipp.

Thirteen grounds of demurrer are stated by the different demurrants, which are substantially the same. They are as follows:

"*First.* That the complainants have not in their bill stated such a case as entitled them in a court of equity to any relief against the defendants or any of them, as to the matters contained in said bill.

"*Second.* That it appears by the bill of complaint that the names of the natural persons and of the corporations, complainants, are not accurately or correctly set forth in said bill, and their residences are not definitely given.

"*Third.* That it appears by the bill that there are divers other persons who are necessary parties to said bill and who are not made parties thereto, and in particular it appears by the bill that the State Bank of Monte Vista named in said bill is a necessary party thereto, and that Norman H. Chapman as assignee for the benefit of creditors named in said bill is a necessary party thereto, but that neither of said necessary parties is made a party to said bill.

"*Fourth.* That it appears by the said bill that complete justice can be done only by the courts of the jurisdiction where the corporation, the said State Bank of Monte Vista, was created, and that only a part of the

stockholders being parties defendant to this proceeding, it is not within the province or power of this court to make the ascertainment and afford the equitable relief contemplated by the Colorado statute, and, therefore, the bill should be dismissed.

"*Fifth.* That it does not appear by the bill of complaint that the complainants have recovered judgments upon their claims against the State Bank of Monte Vista in the State of Colorado or elsewhere, or have had in any way the validity of their claims judicially determined against said bank.

"*Sixth.* That it does not appear by said bill that the validity of the claims of the complainants has been established against the stockholders of said bank by the assignee of said bank or by any court.

"*Seventh.* That it does not appear by said bill that the assets of said bank were legally and properly administered and the proceeds justly and equitably applied to the reduction of the debts of the creditors.

"*Eighth.* That it does not appear by said bill that the assets of the said bank were ascertained and administered in any suit or proceeding to which the stockholders of said bank were parties or wherein the rights and equities of the stockholders of said bank were duly regarded.

"*Ninth.* That the complainants' rights depend upon the statute of the State of Colorado, which cannot be equitably enforced by this court in view of the circumstances set forth in the bill of complaint.

"*Tenth.* The statute of Colorado, upon which the complainants rely, contemplates a proceeding in equity in the domiciliary jurisdiction by the creditors of the corporation against all the stockholders thereof for the purpose of establishing a *pro rata* liability. This court will not enforce the liability created by the statute of Colorado in a suit by creditors against a few of the stockholders.

"*Eleventh.* That the liability imposed upon stockholders by the provisions of the statute of the State of Colorado quoted in the bill of complaint is not enforceable in the courts of this State.

"*Twelfth.* That the said bill of complaint does not set forth any facts showing a liability on the part of this defendant for the debts of Moses E. Worthen, mentioned in said bill.

"*Thirteenth.* That it appears by the bill that the same is exhibited against this defendant and several other defendants for distinct matters and causes, in several whereof, as appears by the bill, this defendant is not in any manner concerned, and that the bill is multifarious."

The cause was argued on these grounds of demurrer.

*Mr. Thomas M. Moore* and *Mr. Henry C. Whitehead,* for the demurrants.

*Messrs. Horton & Till* and *Mr. Eugene Emley* (with whom was *Mr. Philo P. Tolles,* of the Denver bar), for the complainants.

GREY, V. C.

The Colorado statute which is the basis of this suit declares that the shareholders of banks in that state shall be individually responsible for the debts of the bank in double the amount of the par value of the stock owned by them respectively.

The bill of complaint is filed against eleven defendants in different groups, alleging that each group is severally and respectively indebted to the complainants in a certain named sum of money. The complainants pray that each group of defendants may be decreed to pay to the complainants the definite amount of money named in the bill of complaint.

This cause has been argued upon the widest possible basis, presenting variant constructions of the Colorado statute above quoted and citing numerous decisions in different states touching the meaning of that act, the proper mode of procedure to enforce it, and also discussing the constitutionality, operation and effect of the New Jersey act of March 30th, 1897 (*P. L. 1897 p. 124*), prohibiting suits of this character in the courts of this state unless the corporation and all of its stockholders shall be made parties.

I have not found it to be necessary to consider each of the grounds of demurrer to the complainants' bill of complaint, inasmuch as several of the objections presented affect the whole case, as the complainants have stated it in their bill of complaint, and when determined must dispose of these demurrers.

The first cause of demurrer challenges the bill of complaint upon the ground that the complainants have not set forth such a case as entitles them to any relief in equity, &c.

As the complainants state their cause of complaint, they have a right to the payment of seven definitely ascertained sums of money. They seek separate money decrees, that certain named defendants shall respectively pay these several sums, and they ask no other relief. The following summary of the prayer for relief exhibits this feature of the bill of complaint:

The complainants pray

"That John A. Willett may be decreed to pay $1,000; that Robert D. Kent may be decreed to pay $1,000; that Frederick Lowe may be

decreed to pay $1,000; that William P. Aldrich may be decreed to pay $12,000; that Arrianna Van Houten, Ella K. Goodlatte, John E. Kipp and Mary Kipp, as heirs and devisees, may be decreed to pay $1,000; that Isaac Basch, Marion Feeder, James S. Basch, Carrie Basch, Matilda Basch and Emma J. Basch, as heirs and devisees, may be decreed to pay $8,000; that Irene C. Mansur, Harry Worthen, Frank Popple, Jr., Bessie Popple and the Passaic Trust, &c., heirs and devisees, &c., may be decreed to pay $6,000."

It is not asserted that any group of defendants which is alleged to owe one of these definite sums is in any way liable, in whole or in part, for any other of them. Nothing in the expressions of the bill suggests that there is any need of an accounting as between the complainants and any or all of the defendants. No discovery is sought by the bill of complaint. No facts are stated which indicate the existence of any trust which is sought to be enforced, nor is any fraud alleged against which relief is asked, nor is any other element of equity jurisdiction presented by the complainants' bill of complaint. All that is alleged is that certain named defendants are indebted in certain definitely ascertained sums of money to the complainants, which they seek to recover severally in full from the respective defendants by this suit.

As the complainants state their case, there is no ground of equitable jurisdiction exhibited. The facts set forth in the bill of complaint, if taken to be true, as asserted by the complainants, do show that they have a direct, certain and adequate remedy by suit at law to recover each sum of money which they claim against the several defendants respectively. There is therefore no occasion for an appeal to equity jurisdiction. In such cases a demurrer to the bill of complaint will be sustained. *Story Eq. Pl.* § *473.*

The bill of complaint is also challenged by the demurrants upon the ground that it is multifarious. The face of the bill alleges that the defendants, in seven different groups, owe seven distinct sums of money, constituting seven separate causes of action, which, as between the separate groups of the defendants (so far as the bill of complaint states the situation), are wholly unrelated.

The Colorado statute which is alleged to have created the liabilities sought to be enforced in this suit is recited on the face of the bill of complaint to make the shareholders individually responsible in double the amount of the par value of the stock owned by them respectively.

This is obviously a several liability of each shareholder to the creditors of the bank. It was so held in *Auer* v. *Lombard, 72 Fed. Rep. 209.* The complainants themselves insist that it is several.

It has been declared by the Colorado courts interpreting this statute, in the case of *Zang* v. *Wyant, 25 Col. 551,* that a suit in equity for the common benefit of all the creditors affords the most effectual and convenient proceeding to enforce the provision under examination. This very general statement of the occasion for a suit in equity may define correct equity practice in a state in which the distinction between law and equity tribunals is not maintained, but the course of the procedure there suggested cannot be recognized as authority here without bringing our practice into inextricable confusion. Suits in equity in this state are maintained, not because they are effectual or convenient remedies to complainants, but because the relations of the complainants to the defendants are such that they have, as against them, equitable grounds for relief. In the Colorado case cited it does not appear whether all the shareholders or only some of them were made defendants, nor whether the amount of the bank's unpaid debt exceeded the whole sum for which the shareholders were liable, or only a part thereof requiring an accounting and decree for proportionate payments.

In the case presently before me the bill of complaint contains no allegations of facts which justify the joining in one suit these several and respective claims against many different persons. No concert of action by the defendants is alleged. No obligation common to all defendants is set forth, nor is there any tie suggested by which the claims of the complainants against all these defendants should be joined, except that it will prevent a multiplicity of suits. But that would be true if the complainants should join in one suit all the unrelated claims

they might have against any number of defendants. The complainants say each defendant separately owes the whole sum which he is asked to pay, but they state no reason for joining in one suit these seven several and distinct and apparently (so far as the bill shows) unrelated claims.

This feature of the bill of complaint justifies the defendants' contention that it is multifarious. It subjects the defendants, who the complainants show are entitled to defend separately, to the embarrassments of a suit in which others are joined who apparently have no common interest.

It also appears on the face of this bill of complaint that no equitable decree can be made in this suit against the defendants.

It must be noted that the complainants do not ask, nor does their bill contemplate, a collection in this suit from each defendant of that proportion of the bank's debt (not exceeding his whole liability) which he ought to pay. Such a procedure would require not only an accounting, but also the presence, as parties in the suit, of all the shareholders who are liable for proportionate shares of the bank's debt. What the complainants here demand is that each defendant shall pay the uttermost sum for which he may be liable, although the total of the payments which may thus be demanded from all the shareholders will far exceed the bank's debt. This seeks to force upon each defendant an obligation beyond what any equitable construction of his statutory liability requires.

The Colorado statute declares that the shareholder shall be individually responsible for the debts of the bank in double the amount of the par value of the stock which he owns. The obvious meaning is that whatever of the bank's debts its assets (when applied) shall fail to pay, the shareholders shall make good to the creditors, each shareholder being responsible individually, and not jointly, for his proportionate share of the bank's unpaid debts to an extent not exceeding double the amount of the par value of the stock which he may own. It is an obligation severally owed by each shareholder to all of the creditors.

In the present suit the complainants allege that the total of

the bank's unpaid debts is $56,469.03; that the par value of each share issued by the bank is $100, with an issue amounting in the total to $80,000; that of the eight hundred shares issued, the defendants in this suit hold one hundred and fifty, which are of the total par value of $15,000. The present suit seeks several and respective decrees against the defendants (who hold only three-sixteenths of the shares) to the amount in all of $30,000. Like suits against the other shareholders will make them pay $130,000. By such a construction of the statutory liability and procedures to enforce it, the creditors will collect $160,000 to pay the bank's indebtedness, which it is admitted on the face of the bill is little more than one-third of that amount.

There has been some discussion in the cases cited of the question whether this statutory liability is the imposition of a penalty or the creation of a statutory contractual obligation, imposed by the state in granting the franchise, which the shareholder has accepted by taking his shares. The tendency of the courts is to adopt the latter view.

It is a familiar principle that courts of equity will not enforce penalties. The complainants in this suit do not present their case as one seeking to enforce penalties, yet their bill of complaint as framed—by insisting upon the several liability of each defendant to pay as an absolute sum double the par value of his shares, the total of which is far in excess of the bank's unpaid debts, and omitting to bring in as defendants all the shareholders, and to invite an accounting and the ascertainment of the proportionate sums which each should respectively pay to satisfy the bank's unpaid debts—in effect seeks to enforce against each defendant the payment of a fixed sum wholly unrelated and out of all proportion to the amount needed to pay the bank's debts. In short, to enforce a penalty. This defect of the bill of complaint is apparent upon its face, and affects this court's ability to make any decree in this cause which will be just and equitable.

For the reasons above stated, the demurrers to the bill of complaint must be sustained, with costs.