### M. F. ROSE *et al.* *v.* S. N. MORROW *et al.*\*

### (*Nashville.* December Term, 1925.)

1. **BANKS AND BANKING.** Depositor's suit to enforce statutory liability of stockholders held not premature, though liquidation of bank was not complete (Acts 1909, chapter 54).

Where depositor, suing to enforce statutory liability of stockholders, under Acts 1909, chapter 54, alleged not only insolvency, but an indebtedness to depositors in excess of all realizable assets, including full amount of double liability of entire outstanding stock, suit could not be held premature on ground that liquidation of bank was incomplete, and amount of statutory liability, if any, undetermined. (*Post, p.* 100.)

2. **BANKS AND BANKING.** Complaint in depositor's suit to enforce statutory liability of stockholders held not demurrable for failure to show exhaustion of remedies against bank (Acts 1909, chapter 54).

Where depositor, suing to enforce statutory liability of stockholders, under Acts 1909, chapter 54, alleged not only insolvency, but an indebtedness to depositors in excess of all realizable assets, including full amount of double liability of all outstanding stock, *held,* complaint was not demurrable on ground that prior exhaustion of remedies against bank was not shown. (*Post, p.* 100.

Acts cited and construed: Acts 1909, ch. 54.

3. **EQUITY.** Rule as to multifariousness of parties is substantially rule of convenience; and, where complainants have common interest, bill is not multifarious, though claims are in a sense distinct.

Rule as to multifariousness of parties is substantially a rule of convenience invoked to avoid confusion, complications, expense, or delay; and, where complainants have a common interest as to

153 Tenn.—7.

points in issue, a bill is not multifarious, though their claims are in a sense distinct. (*Post, pp.* 101, 102.)

Case cited and approved: Wade v. Pulsifer, 54 Vt., 45.

4. **EQUITY. Bill on behalf of all depositors against all stockholders to enforce statutory liability held not multifarious as to parties complainant or defendant (Acts 1909, chapter 54).**

Depositor's bill on behalf of himself and all other depositors to enforce statutory liability of stockholders, under Acts 1909, chapter 54, brought against all stockholders, *held* not multifarious as to parties complainant or defendant. (*Post, pp.* 102-104.)

Cases cited and approved: Eames v. Doris, 102 Ill., 350; Queenan v. Palmer, 117 Ill., 62; Emmert v. Smith, 40 Md., 123; Pfohl v. Simpson, 74 N. Y., 137; Johnson v. Fischer, 30 Minn., 173; Leucke v. Tredway, 45 Mo. App., 507; Booth v. Dear, 96 Wis., 516; Bank v. Fiske, 60 N. H., 363; Ins. Co. v. Confectionery Co., 124 Tenn., 247; Johnson v. Brown, 21 Tenn., 327.

5. **EQUITY.**

Existence of an adequate remedy at law is not always ground for dismissal of equitable suit brought on contract in chancery courts. (*Post, p.* 104.)

6. **BANKS AND BANKING.**

Adequate remedy at law *held* not to require dismissal of bill on behalf of all bank depositors to enforce statutory liability of all stockholders. (*Post, pp.* 104, 105.)

Cases cited and approved: Tompkins v. Craig, 93 F., 885; Hale v. Allinson et al., 102 F., 790; Miller v. Willett, 62 A., 178; Ohio Life Ins. Co. v. Merchants' Ins. Co., 30 Tenn., 1.

7. **BANKS AND BANKING.**

All bank stockholders, and not merely those who signed charter or acquired stock from one so signing, are subject to double liability, under Acts 1909, chapter 54, sections 1-4. (*Post, pp.* 105-107.)

8. **BANKS AND BANKING.** Where bill against all stockholders of bank was not multifarious, individual corporate defendant could not

Rose v. Morrow.

complain that it was sued in county where it was neither located nor had an office or agent.

Where bill against all stockholders of bank to enforce statutory liability was not multifarious as to parties, an individual corporate defendant, executor and trustee of estate of deceased stockholder, could not complain that it was sued in a county where it was neither located nor had an office or agent. (*Post*, *p*. 107.)

*Headnotes 1. Banks and Banking, 7 C. J., Section 114; 2. Banks and Banking, 7 C. J., Section 114; 3. Equity, 21 C. J., Section 442; 4. Equity, 21 C. J., Sections 440, 448; 5. Equity, 21 C. J., Section 27; 6. Banks and Banking, 7 C. J., Section 85; 7. Banks and Banking, 7 C. J., Section 67; 8. Banks and Banking, 7 C. J., Section 109.

## FROM ROBERTSON.

Appeal from the Chancery Court of Robertson County. —Hon. J. W. Stout, Chancellor.

True & Dorsey, for appellants.

W. D. Sugg, E. J. Smith and Norman Farrell, for appellees.

Mr. Justice Chambliss delivered the opinion of the Court.

This suit was brought to enforce the statutory liability of stockholders of the People's (State) Bank of Springfield, under chapter 54 of the Acts of 1909. The complainant sued on behalf of himself and all other depositors, alleging not only insolvency, but an indebtedness to depositors in an aggregate amount in excess of

all realizable assets, including the full amount of the double liability of the entire outstanding capital stock. The receiver was first joined as a complainant, but on the hearing his name was withdrawn. Demurrers, in a common form, interposed on behalf of all the defendants, some fifteen or twenty stockholders, or their representatives, were sustained by the chancellor, and the bill dismissed. The grounds of demurrer were (1) multifariousness as to both the complainants and the defendants; (2) prematurity, in that liquidation of the bank was incomplete and the amount of statutory liability, if any, undetermined; (3) want of an allegation that defendants either signed the charter, or held stock acquired from those signing; and (4) no showing of prior exhaustion of remedies against the bank, the primary debtor.

In view of the alleged insolvency of the bank to the extent heretofore stated, and the pending administration of its affairs by a receiver, neither the last ground above stated nor that of prematurity are sustainable. Indeed, the propositions advanced in the brief of defendants in this court are reduced to the following: First, that the statute is to be strictly construed and particular attention directed to its wording; second, that it imposes a several rather than a joint liability, both of which may be conceded; third, that the bill is multifarious, both as to complainants and defendants; fourth, that there is no estoppel; and, fifth, that defendant Nashville Trust Company, executor and trustee of the estate of Mrs. Sugg, who died the owner of stock, was improperly sued in Robertson county, where it was neither located, nor had an office, or agent, this last question being made by separate demurrer.

Rose v. Morrow.

Multifariousness as to parties is quite generally recognized as incapable of exact definition, its application depending upon the facts of the particular case, and resting largely in the discretion of the court. It appears to be a rule of convenience, properly invoked to avoid confusion, complications, expense, or delay, and consequent injustice—provided, that parties brought before the court in one suit have, generally speaking, an interest, direct or indirect, in the subject-matter of the litigation and the relief sought. For the rules of practice in this State touching the subject of multifariousness, and particularly the disfavor with which this defense is considered, see Gibson's Suits in Chancery, sections 112 and 284.

It is said that—"In order to complain successfully of multifariousness in this form (i. e., as to parties) a defendant must show that 'he is brought as a defendant upon a record with a large portion of which, and of the case made by which, he has no connection whatever.' But a bill is not so multifarious where complainants have a common interest as to the points at issue, though their claims are in a sense distinct." 14 Ency. P. & P. 201, citing cases.

It is also here said that—"Applications of the rule regarding multifariousness will be made more intelligently when the object and reason of the rule is understood. The reason most often given in the books is the desire 'to protect a defendant from unnecessary expense.'" Another purpose is to serve the convenience of the defendant and to avoid compelling him to present unnecessary defenses, or to complicate his defense by combining matters which have no necessary connection with each other. Some courts have so emphasized this

feature as to make the rule merely one of convenience, and apply or withhold it according as the parties would be most accommodated. 14 Ency. P. & P. 202.

The question is "whether the court can accord full and substantial relief to all parties in interest without embarrassing the chances for defense." *Wade* v. *Pulsifer*, 54 Vt., 45.

In the instant case it cannot be denied that each depositor has a legal claim against each and every stockholder to the extent of their statutory liability. Each depositor may assert his claims against one, or may elect to sue all, of the defaulting stockholders. Why may not all depositors elect to pool their demands in one suit against one or all defaulting stockholders? The liability of each defendant stockholder is nevertheless limited by his statutory obligation, and he is not prejudiced when it appears, as in the instant case, that the sum of the liability to depositors exceeds the total of the obligations of all stockholders. The question of whether or not the statutory liability is several or joint is not material. The liability of each defendant is fixed at an amount equal to his stockholding and so limited. It is wholly immaterial to him whether he is sued by one large depositor or a dozen smaller ones with claims equalling the one. His defenses against liability to any depositor are equally available against one or many, whether payment, or nonsubscription, or transfer before insolvency, or other grounds. Likewise, he may deny the claim of any one or all because never depositors, theretofore satisfied, or for other reasons.

The filing in this case of like demurrers for all the defendants is an illustration in itself of the readiness with

which the defenses may be joined and disposed of together. In 20 Ency. P. & P., 703, it is said that—"A proceeding in equity is frequently used by creditors to compel delinquent stockholders to pay balance due from them on subscriptions or calls, *or to enforce their additional or statutory liability* for corporate indebtedness." (Italics ours.)

. Among other cases cited to sustain the text, which appear to be particularly in point here, are *Eames* v. *Doris,* 102 Ill., 350; *Queenan* v. *Palmer,* 7 N. E., 470, 613, 117 Ill., 619; *Emmert* v. *Smith,* 40 Md., 123; and *Pfohl* v. *Simpson,* 74 N. Y., 137. In the last case cited it was directly decided that the fact that by the provisions of the act the stockholders of the bank were made "severally" liable did not preclude the attaching and exercise of equitable jurisdiction.

That the equitable remedy is adopted by statute in many jurisdictions and made exclusive, indicates recognition of the propriety and desirability of this procedure. *Johnson* v. *Fischer,* 14 N. W., 799, 30 Minn., 173; *Leucke* v. *Tredway,* 45 Mo. App., 507; *Booth* v. *Dear,* 71 N. W., 816, 96 Wis., 516; *Bank* v. *Fiske,* 60 N. H., 363. The numerous depositors constitute a "class," and, likewise, the stockholders. A bill such as this before us, in the nature of a general creditors' bill, though not strictly such, would seem to be properly brought by one or more of a class on behalf of all. Equity delights in equality, and if all claimant depositors elect to join and seek a ratable, or *pro rata,* application of a limited fund, namely, the proceeds of this double liability obligation of the stockholders, instead of entering into independent struggles for priorities by means of numerous separate suits,

we are unable to perceive whereof those liable to pay in the fund can complain. We think it clear that multiplicity of suits will be prevented and convenience of the parties served and there is no misjoinder or multifariousness of parties. These views are in harmony with those expressed by Mr. Justice NEIL in the leading case of *Ins. Co.* v. *Confectionery Co.,* 136 S. W., 915, 124 Tenn., 247, 34 L. R. A. (N. S.), 897, wherein he reviews and quotes from our Tennessee cases, beginning with *Johnson* v. *Brown,* 2 Humph., 327, 37 Am. Dec., 556, and other authorities.

Without attempting a review in detail of all authorities cited in the brief of learned counsel for defendants, it may be said that the federal and New Jersey cases of *Tompkins* v. *Craig* (C. C.), 93 F., 885; *Hale* v. *Allinson et al.* (C. C.), 102 F., 790; and *Miller* v. *Willett,* 62 A., 178, 70 N. J. Eq., 396, are not only to some extent distinguishable under the general rule, particularly applicable to the issue of multifariousness, that each case must stand on its peculiar facts; but it appears quite apparent that the conclusions in these cases were reached with a distinction in mind, applicable to those jurisdictions, between legal and equitable remedies. In all these opinions references were made to the necessity for some showing of a distinctly equitable ground of jurisdiction, such as the fixing of an assessment or apportionment of liability, or other accounting, or prevention of a multiplicity of suits. For instance, in affirming the case of *Hale* v. *Allison,* supra, the circuit court of appeals for the third circuit said, as quoted in the brief of counsel:

"But the court below dismissed the bill solely upon the ground that the complainant had an adequate remedy at law." 106 F., 258, 45 C. C. A., 270.

This is not always a ground for dismissal of a suit brought on a contract in the chancery court in Tennessee. The opinions quoted from at length contain many expressions emphasizing this as a ground of the action taken. Nor is the Tennessee case of *Ohio Life Insurance Co.* v. *Merchants' Insurance Co.,* 11 Humph., 1, 35, 53 Am Dec., 742, quoted from, in point here. In that case there was a joinder of distinct and disconnected matters. The multifariousness was not of parties, as insisted here, so much as of subject-matter. This is a phase of multifariousness apart from that applicable to a misjoinder of parties.

Nor can we concur in the insistence that no case is made by the bill against the defendant stockholders because the act makes only those liable who sign the charter, or who acquire their holdings by transfer from one so signing, and the bill fails to charge in terms that these defendants come within this description. On the facts shown, that is, that these defendants hold stock issued to them or which they have drawn dividends and voted, containing express recitals of the double liability, they cannot effectively deny assumption of such liability to depositors. The suggested construction of the language of the act seems to us too narrow. The caption fairly states its object and effect:

"To provide that holders of stock in same shall be liable to its depositors, in addition to their stock, individually in an amount equal to the par value of their stock."

The controlling sections of the act are as follows:

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that charters may be granted any association of five or more persons, not under twenty-one years of age, to conduct a general banking business under the laws of this State, and for the security of the depositors of said bank may bind themselves not only to the extent of their stock, but, in addition, individually to the extent of the par value of their stock.

"Sec. 2. Be it further enacted, that the charters herein provided for shall be signed and authenticated for registration as now provided by law by all of said stockholders, and said stockholders shall represent the full capital stock provided by the charter.

"Sec. 3. Be it further enacted, that said corporation so organized shall issue to each stockholder a certificate or certificates of his stock, which said certificates shall show on their face that the owner and holder of the same is bound to the depositors of said bank not only to the extent of his stock, but, in addition, individually to the extent of the par value of his stock, and said stockholder shall continue so bound until he shall sell and transfer his stock and the purchaser of the same shall accept from said banks a like certificate.

"Sec. 4. Be it further enacted, that a purchaser of stock issued as above provided shall be held liable according to the amount of his stock, as was the original holder of said stock."

It will be observed that, in substance, section 1 provides that charters may be issued containing provision for such double liability; section 2, that the incorporators shall sign the form reciting such provisions, there-

by expressly binding themselves, and that the full capital stock authorized to be issued shall thus carry this obligation; section 3, that every certificate issued shall bear on its face, as express notice to every holder, a recital of this obligation; and section 4, that every purchaser (without limitation as to the chain or source of his title) "shall be held liable according to the amount of his stock, as was the original holder of said stock"— his predecessor in ownership—who could not lawfully have acquired the same, except subject to this double liability obligation.

Construing the several sections of the act together, it is quite clear that it is not within the contemplation of the act that any stock in a corporation chartered under this chapter shall be issued, or owned, which does not carry with it the double liability obligation to depositors. The act in clear effect provides that a corporation so organized shall issue to each stockholder a certificate or certificates of his stock showing on the face thereof that the owner and holder is so bound so long as he owns the stock, and that his transferee shall accept, as a condition of the transfer to him, a certificate showing assumption of a like liability. Under these circumstance, an allegation that a defendant is a stockholder necessarily carried with it the charge that his stock is burdened with this obligation, for the fulfillment of which he is legally responsible as its owner.

The bill having been found not to be multifarious, the objection by Nashville Trust Company to the jurisdiction of the Robertson county chancery court cannot be sustained.

The decree is reversed, and the cause remanded.