JAMES PILBEAM, Appellant, *v.* HERBERT I. SISSON, as State Superintendent of Highways, Defendant, Impleaded with FRED J. WAGNER, as County Superintendent of Highways of Madison County, and Others, Respondents.

Third Department, March 7, 1923.

Highways — taxpayer's action to restrain construction of highway in Madison county — highway was authorized by proper resolution of board of supervisors under Highway Law, §§ 320-a and 320-b — town board and town superintendent of highways have no authority over said highway — fact that many citizens preferred construction of another road does not show fraud or corruption — it was not necessary to consult town superintendent or that he give certificate for construction and improvement — injunction will not be granted simply because contract is unwise.

A resolution passed by the board of supervisors of Madison county appropriating county funds which with State aid are to be used to construct and improve certain highways, which provides that the highways in a certain town shall be constructed under the direct personal supervision of the county superintendent of highways or some person designated by him, and that the money shall be paid by the county treasurer on the certificate of the county superintendent of highways, countersigned by the chairman of the board of supervisors, to the person performing the work or furnishing the material, complies with sections 320-a and 320-b of the Highway Law for construction of a highway with State aid.

In the construction of a highway of that kind, the town board and the town superintendent of highways have no power under section 105 of the Highway Law to determine the place where the road shall be constructed and how the money shall be expended, for said section relates to an entirely different class of highways known as " town highways."

The fact that many citizens in the town favor the construction of another and different road does not establish that the board of supervisors was guilty of fraud, corruption or wrongdoing in building the road in question.

It was not necessary that the town superintendent of highways should be consulted or that he should give a certificate for the construction and improvement of the road, and the failure to do so furnishes no legal ground for enjoining its construction in a taxpayer's action.

As no part of the funds of the town were to be used in the construction of the road in question, though $1,000 had been appropriated by the town board, which was not used and is not now intended to be used for that purpose, there has not been any waste or threatened waste of the town's moneys.

The mere fact that the construction of the road in question may be unwise does not furnish a reason to restrain its construction, but the plaintiff in order to be successful must allege and prove either that the contract is illegal or that fraud and collusion entered into its making.

APPEAL by the plaintiff, James Pilbeam, from an order of the Supreme Court, made at the Madison Trial and Special Term and entered in the office of the clerk of the county of Madison on the 10th day of June, 1922, vacating a preliminary injunction contained in an order to show cause, restraining the construction of a certain road in the town of Madison, Madison county, N. Y.

*Carlos J. Coleman,* for the appellant.

*Charles R. Coville* and *William E. Lounsbury,* for the respondents.

Order unanimously affirmed, with ten dollars costs and disbursements, on the opinion of TUTHILL, J., at Special Term.

The following is the opinion of the court below:

TUTHILL, J.:

This is a taxpayer's action to prevent alleged illegal official acts and to prevent waste, the claim of the plaintiff being that a highway in the town of Madison, Madison county, is being illegally constructed and funds wasted therefor.

The real controversy is, which of two highways in the town shall be improved. The highway the construction of which is sought to be restrained is being improved pursuant to authority of the board of supervisors of Madison county under sections 320-a and 320-b of the Highway Law, which give authority to a board of supervisors to designate the highway or highways in the towns to be constructed or improved by the aid of the county, and under section 320-b the State is authorized to aid counties in the construction or improvement of highways or roads, the section expressly providing that " the board of supervisors of any county shall determine the place where and the manner in which such money shall

be expended for the construction and improvement of highways or roads, pursuant to the provisions of sections three hundred and twenty or three hundred and twenty-a of this chapter."

By a resolution duly passed by the board of supervisors of Madison county, December 13, 1921, it was provided that an appropriation be made by the county, which, together with the State aid, was to be used to construct and improve the highways designated in the resolution in thirteen towns of the county, among which was the road in question. The resolution also provided that the roads in the towns of Madison and Smithfield "shall be constructed under the direct personal supervision of the county superintendent of highways, or some person designated by him, and the money shall be paid by the county treasurer on the certificate of the county superintendent of highways, countersigned by the chairman of the board of supervisors, to the person performing the work or furnishing the material." The resolution is in due form and sections 320-a and 320-b of the Highway Law fully authorize the same. It is to be observed that the town of Madison, from town moneys, pays for no part of this road except as it contributes to the general taxes with the other towns for such purposes.

I do not believe the town board of Madison, or the town superintendent of highways, has any authority or jurisdiction over this road until it is completed and turned over to the town. The plaintiff's counsel claims that under section 105 of the Highway Law,* the town board and town superintendent are to determine the place where and how the moneys shall be expended for highways within the town, but this section relates to an entirely different class of highways, known as " town highways," under the classification of highways given by subdivision 4 of section 3 of the Highway Law†.

Former Attorney-General Woodbury, in an opinion under date of May 23, 1916 (*Matter of Construction of Highway Law,* §§ *90–101, 320, 320-a,* 7 St. Dept. Rep. 549), held that " the roads provided for in sections 320‡ and 320-a were intended by the Legislature as a separate and independent system of road construction and maintenance and that the moneys raised as provided by sections 90 to 101, inclusive, of the Highway Law,¶ cannot be used for the construction or maintenance of such roads."

A somewhat ambiguous sentence appears in section 320-a of the

---

* Amd. by Laws of 1920, chap. 561.— [REP.

† Renumbered from subd. 3 by Laws of 1910, chap. 567, as amd. by Laws of 1916, chap. 578.— [REP.

‡ Amd. by Laws of 1920, chap. 841.— [REP.

¶ These sections have been several times amended.— [REP.

Highway Law* regarding the payment for work done, and says that "orders shall be drawn to the order of the supervisors of the respective towns where roads are being constructed to be disbursed by them, upon the orders of the town superintendent or person designated in his stead, in accordance with the agreement as provided by section one hundred and five of this chapter and accounted for in the supervisor's annual report as provided by section one hundred and seven of this chapter." I do not believe, however, that such provision refers to cases where the town is paying directly no portion of the expense of the improvement, which is the fact in the present case as the whole expense is being borne by the county and State equally, and the improvement is under the control of the board of supervisors. Also it is to be observed that by the last sentence of section 320-b,† provision is made that reports shall be rendered by the board of supervisors in the manner, so far as practicable, provided by section 107 of this chapter‡ and that in a county in which the town contributes no portion of the cost the county treasurer shall file with the clerk of the board of supervisors a report of all expenditures which shall be printed in the annual proceedings of the board and three copies transmitted to the Commission and also three copies to the Comptroller.

I am, therefore, of the opinion that so far as the procedure is concerned in the instant case, it is and has been pursuant to law and nothing illegal has transpired.

Furthermore, from the facts appearing in the papers submitted, I do not believe it can be consistently said that there has been shown fraud, corruption or wrongdoing by any official. No doubt it is true that many citizens of the town of Madison would prefer another and different road improved, and that there has been strife and contention as to which road should be first built, but such does not constitute wrongdoing and a taxpayer's action cannot be predicated upon such a state of facts. Many opposed to the road petitioned the town board and the board of supervisors that the same be not improved, and while I do not believe the former had any jurisdiction or authority in the matter, yet they seemed to favor the Gorge road, so called, and which was the one designated by the board of supervisors and is now being constructed.

The claim that the town superintendent of highways was not consulted and gave no certificate for the construction and improve-

---

* Added by Laws of 1914, chap. 61, as amd. by Laws of 1920, chap. 871.— [REP.

† Added by Laws of 1920, chap. 840. Since amd. by Laws of 1922, chap. 162.— [REP.

‡ Amd. by Laws of 1920, chap. 559.— [REP.

ment of this road, furnishes no legal reason, in my opinion, for enjoining its construction, for, as I stated above, I do not believe he has at this time any jurisdiction over the same, as any authority which he might have had was superseded by the resolution of the board directing that this road be constructed under the direct personal supervision of the county superintendent of highways, or some person designated by him, as permitted by section 320-a of the Highway Law.

It would appear that on the 10th day of November, 1921, the town board of the town of Madison passed a resolution appropriating $1,000 for the road now under construction, the improvement of which road was subsequently authorized by the board of supervisors December 13, 1921, when the resolution was passed authorizing the improvement of this, with other roads, and providing for the expense of the improvement as a State and county charge. It also appears that such $1,000 has never been used and I do not believe it can be properly used for the purposes for which it was appropriated, and apparently there is no disposition to do so. The predecessor of the present supervisor contends he turned the amount over to his successor and plaintiff's counsel asserts that he does not deem it important as to whether it had been turned back or not as there is no authority in the present supervisor to use it in case it was returned. So it would seem there has not been any waste, nor threatened waste of the town's moneys for the same has not been used, and from the position taken by the present supervisor there is no intention or disposition to use such money for the purposes of improving this road.

To allege fraud, collusion, corruption and waste is far from establishing facts constituting the same, as to which I believe the moving papers are barren. I am satisfied that such acts have not been perpetrated and that the whole controversy is the result of rivalry as to the improvement of certain highways in the town of Madison.

The courts have held in numerous cases that they will not interfere to restrain a municipality from entering into or carrying out a contract simply because it is unwise; that the plaintiff must allege and prove either that the contract is illegal or facts showing fraud and collusion. In *Talcott* v. *City of Buffalo* (125 N. Y. 280) Judge O'BRIEN (pp. 286, 288) said: " The terms ' waste ' and ' injury ' used in this statute* comprehended only illegal, wrongful or dis-

---

* See Laws of 1872, chap. 161, as amd. by Laws of 1879, chap. 526, and Laws of 1880, chap. 435; Code Civ. Proc. § 1925; Laws of 1881, chap. 531, as amd. by Laws of 1887, chap. 673; since amd. by Laws of 1892, chap. 301; now Gen. Mun. Law, § 51.— [REP.

honest official acts, and were not intended to subject the official actions of boards, officers or municipal bodies acting within the limits of their jurisdiction and discretion, but which some taxpayer might conceive to be unwise, improvident or based on errors of judgment, to the supervision of the judicial tribunals. It is believed that no action was ever maintained under this statute with the sanction of this court, without some proof or allegation that the official act or proceeding complained of was without power or was tainted by corruption or fraud. * * * Full force and effect can be given to the statute by confining it to a case where the acts complained of are without power, or where corruption, fraud or bad faith, amounting to fraud, is charged. Any other construction would subject the discretionary action of all local officers and municipal bodies to review by the courts at the suit of the taxpayers, a result which would burden the courts with litigation, without increasing the efficiency of local administration. Whatever evils may exist in the government of cities that are due to mistakes, errors of judgment or the lack of intelligent appreciation of official duty, must necessarily be temporary, compared with the mischief and inconvenience which judicial supervision, in all cases, would ultimately produce."

Also in the action of *Rogers* v. *O'Brien* (1 App. Div. 397) the court by RUMSEY, J., said: " The Taxpayers' Act was not intended to restrain an attempt by municipal officers to perform their duty in good faith in an effort to protect the property of a municipal corporation. To enable the taxpayer to interfere and prevent the action on their part, the courts require something more; some fraud or bad faith, or some such action as is beyond the power or authority of the officer, and which will waste the property of the corporation, or impose improper burdens upon the body of the taxpayers."

In the case of *Childs* v. *Tompkins* (180 App. Div. 855) the rule is succinctly stated by PUTNAM, J. (at p. 857): " The framers of this statute [Taxpayers' Act] did not intend to give a referendum to the courts when called on by a minority of a municipal board." (See, also, *Hearst* v. *McClellan*, 102 App. Div. 336; *Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377; *Davenport* v. *Walker*, 57 App. Div. 221.)

It follows from the foregoing that the preliminary injunction order heretofore granted should be vacated and set aside, with ten dollars costs to the defendants represented by different attorneys, in all twenty dollars. An order will be made accordingly.