JOSEPH A. BRODERICK, as Superintendent of Banks of the State of New York, Plaintiff, v. ROBERT ADAMSON and Others, Defendants.*

Supreme Court, New York County, July 10, 1933.

* See, also, 146 Misc. 414; Id. 456.

354

*Carl J. Austrian* [*Arthur Ofner, Harold N. Cohen, Warren C. Fielding* and *Leo C. Fennelly* of counsel], for the plaintiff.

*House, Grossman & Vorhaus* [*Louis Vorhaus* and *David Vorhaus* of counsel], *Kaufman & Weitzner* [*Samuel H. Kaufman* and *Emil Weitzner* of counsel], and 120 other attorneys for defendants.

LYDON, J.   The Superintendent of Banks of the State of New York took possession of the Bank of United States on December 11, 1930, and thereafter proceeded to liquidate its affairs pursuant to the statute (Banking Law, art. 2).   This action was subsequently commenced to enforce the statutory liability of the stockholders of the bank and was originally brought against the stockholders of record only; but by supplemental summonses the transferees of certain shares were impleaded by some of the original defendants.   A number of defendants paid assessments to the full amount of their stock during the pendency of the action and others have paid in part under stipulations entered into by said defendants and Superintendent.

The evidence presented by the Superintendent established a *prima facie* case showing the insolvency of the bank.   A number of defendants offered some evidence in support of their contention that the bank was not insolvent at the time of the notice of assessment, but those defendants during the trial entered into a stipulation of settlement with the Superintendent.   No other evidence was offered on that issue.

I have found in favor of plaintiff on the main issues of insolvency and the right to impose the assessment and these issues do not require discussion here.   There are, however, a number of special cases relating both to claims by the plaintiff against stockholders

of record and special defenses of such stockholders, as well as claims over made by stockholders of record against impleaded defendants, about which a few words should be said.

*First,* as to claims of plaintiff against stockholders of record:

### CLAIM AGAINST MORRIS W. HAFT.

Haft was the owner of record in his individual name of 475 shares. As to these there is no dispute that he is liable to the assessment. He was also recorded as the owner of 299 shares in trust for Jules David Haft, who is his infant son.

The testimony leaves no doubt that a trust was voluntarily created by the father for his son in these shares. As to them he is liable as trustee under the provisions of subdivision 1 of section 120 of the Banking Law. There is no ground upon which he can be held personally liable. Subdivision 2 of section 120 has no application to the case. It would only apply if the stock was recorded in the name of a third person though actually owned by Haft in a fiduciary capacity.

It follows that judgment will go against Haft individually as to 475 shares and against him as trustee as to 299 shares.

### CLAIM AGAINST SOLOW BROS. AND SOLOW BROS. INC.

Plaintiff has sued Joseph Solow and Samuel Solow (who, he alleges, were formerly copartners under the firm name of Solow Brothers) and the corporation Solow Brothers, Inc. He alleges that the partnership appears on the stock ledger to be the holder and owner of 200 shares. He further alleges that in April, 1928, the corporation was organized and succeeded to and acquired all the assets and assumed all the liabilities of the partnership, including the ownership of the 200 shares in question.

The stock was bought at various times between December 14, 1928, and September 5, 1929. At that time there was no partnership in existence. The stock was bought and paid for by the corporation and plaintiff concedes that it belongs to the corporation. But it was recorded in the stock ledger under the name " Solow Brothers." The certificates for 190 shares were issued in the name of " Solow Brothers," but the certificate for the remaining 10 shares was issued in the name of the corporation.

The testimony makes it perfectly clear that there was no such partnership or other entity as " Solow Brothers " and that their name was carelessly used to designate the corporation. It follows that the complaint against the two brothers, Joseph and Samuel Solow, should be dismissed on the merits.

The complaint against the corporation rests upon the theory that

it acquired the assets and assumed the liabilities of the partnership and that the stock in question was so acquired. But the fact is that the partnership never owned the stock and the corporation never acquired it from the partnership. The partnership ceased to exist in April, 1928, and the corporation did not commence to buy the stock until December, 1928.

Plaintiff urges that in any event he is entitled to recover on the theory that the corporation is the real owner of the stock, under subdivision 2 of section 120 of the Banking Law, although it was registered in the name of the partnership. Defendants urge that this would be to allow a recovery upon an entirely different theory than that set forth in the complaint and point out that no amendment was asked or allowed.

It is true that the derivation of the corporation's title as proved was inconsistent with the allegations of the complaint on that point, but it does not seem to me that that is a fatal variance. The complaint did allege ownership by the corporation and that is the vital thing.

I think, therefore, that plaintiff should have judgment against the corporation.

## CLAIM AGAINST REYNOLD GOODMAN.

Goodman is recorded as the individual owner of 89 shares as to which there is no dispute. He is also recorded as the owner of 336 shares as trustee for Reynold H. and Elaine Goodman, his children, and as to those shares I am of the opinion that he is liable only as trustee. Judgment will be given accordingly.

## CLAIM AGAINST ANDREW J. DINNEN.

Plaintiff seeks to hold Dinnen as a stockholder. Dinnen claims that he was not a stockholder when the Superintendent took possession.

Dinnen was the assistant cashier of a firm of stockbrokers and had been used by said stockbrokers as nominee in whose name was put stock of customers held as collateral. On December 10, 1930, he delivered the certificates to the bank for transfer to his name. They had been indorsed in blank by the owner of record and Dinnen had filled in his own name as transferee. The bank closed the next day and the transfer on the books was not made until some days later. On December nineteenth new certificates were delivered to him in his name. They were dated December tenth, but the proof does not show when they were executed. The subsequent entry made on the stock ledger was dated back to December tenth.

In *Richards* v. *Robin* (178 App. Div. 535, 543) the Appellate Division, First Department, approved the doctrine of *Whitney* v.

*Butler* (118 U. S. 655) to the effect that where a stockholder had done all that was necessary to effectuate a transfer of his stock he was not to be regarded as a stockholder within the statute. If this is so it seems to me that the converse must follow and that one who has done all that is necessary to effect the transfer of stock to himself before the bank closes ought to be regarded as a stockholder although the actual entry on the stock ledger is not made until later.

In such a case someone must be held to be liable as a stockholder. If Dinnen was not the stockholder here the former owner would be liable for the assessment. As between the two it would seem rather shocking to hold the former owner and exonerate Dinnen, who had done all within his power to become a stockholder. I think the court should regard as done what ought to have been done and so hold that Dinnen was the stockholder within the meaning of the statute. Judgment will, therefore, go against Dinnen.

### CLAIM AGAINST GORDON & SCHULMAN.

The special defense of these defendants is that they had done all that was necessary to entitle them to have their stock transferred to their vendee before the closing of the bank and should, therefore, be exonerated under the rule in *Whitney* v. *Butler* (118 U. S. 655), which was approved by the Appellate Division, First Department, in *Richards* v. *Robin* (178 App. Div. 535, 543).

But, even if it be conceded that the evidence is sufficient to bring the case within the rule so established, defendants must be denied exoneration because the transfer of their stock was not made to a resident of this State. (Banking Law, § 120; *Persons* v. *Gardner*, 113 App. Div. 597; affd., on opinion below, 188 N. Y. 571.) Judgment will, therefore, go against them.

### CLAIM AGAINST HARRY I. LUBER.

The claim against this defendant was dismissed on the trial and the ruling is adhered to.

### CLAIM AGAINST CLOSE HOLDING CORPORATION.

The proof wholly failed to sustain the special defense pleaded and judgment will go against this defendant.

### CLAIM AGAINST ISIDOR EVANS.

The defense based on the absence of stock transfer stamps is dismissed and the judgment will go against this defendant.

I now come to the claims of stockholders of record against subsequent unrecorded purchasers and by some of such purchasers against later holders.

It is first to be noted that the statute has nothing to do with such claims. It defines only the right of the plaintiff, the Superintendent of Banks, to recover against stockholders of record and others. The rights of the defendants among themselves depend solely upon general equitable principles.

A recovery by the stockholder of record against the last owner prior to the closing of the bank is allowed in equity on the theory that the owner of record holds the record title and any dividends which may come to him by reason of his record ownership for the benefit of the real owner, and so he is entitled to be indemnified by the owner for any loss which may fall upon him by reason of the fact that he is recorded on the books of the bank as the owner of the stock. (*Richards* v. *Robin*, 175 App. Div. 296; affd., 225 N. Y. 719.) But there is no similar relation between the various subsequent vendors and vendees through whose hands the stock may pass by delivery of the certificates indorsed in blank. There is no reason why any such unrecorded owner should be regarded as standing in a trust relationship to his vendee and we have refused to adopt the theory of implied contract under which, in England, a vendor may always recover over against his immediate vendee. (*Spencer* v. *Ashworth, Partington & Co.*, [1925] 1 K. B. 589.)

CLAIM OF LOUIS F. WHITE AGAINST IMPLEADED DEFENDANTS.

When the bank closed White was the record owner of 1,900 shares and there is no dispute that he is liable to plaintiff for the assessment on those shares. But he had impleaded P. F. Huff Underwriters, Inc., to whom he sold 10 shares, and Peres F. Huff Co., Inc., to whom he sold 200 shares, and he asks judgment over against them as to those shares.

The ten shares were sold and delivered on November 25, 1930. Later, and before the closing of the bank, the vendee of these shares resold and delivered them to a third person. Under the decision in *Richards* v. *Robin* (*supra*) the original vendee was thus exonerated from liability to the stockholder of record and the claim against P. F. Huff Underwriters, Inc., must be dismissed on the merits.

The 200 shares were sold by White to Perez F. Huff Co., Inc., on December 10, 1930. There is some dispute in the testimony as to whether they were delivered on December tenth or December eleventh, but this is immaterial. But the vendee here claims exoneration on the ground that it had parted with its interest in the stock and that its vendee should have been impleaded rather than itself. On that question the time of the transfer of the interest of the vendee is of controlling importance. I have held, for reasons stated in the discussion of other claims, that if an owner is to rid

himself of liability to the stockholder of record he must have parted with his interest prior to the closing of the bank. Here, although the vendee contracted to sell the stock on December tenth, it concededly did not deliver it until December eleventh. Legal title, therefore, did not pass until December eleventh, when the bank had closed. But the equitable title passed when the contract of sale was made. (*Currie* v. *White*, 45 N. Y. 822.) The purchaser was the real owner for whose benefit the owner of record held the nominal title and to whom he would have been bound to account for any dividends or other benefits which might come to him by reason of his record title. The rights of the stockholder of record against subsequent purchasers depend wholly upon equitable principles, and equitable rather than legal titles should be considered in fixing the liability. I think, therefore, that the equitable owner on December 10, 1930, is to be considered the person liable to the stockholder of record in applying the principle of the decision in *Richards* v. *Robin* (*supra*). The claim against Perez F. Huff, Inc., must, therefore, be dismissed on the merits.

### Claim of Dixon & Co. against Impleaded Defendants.

Dixon & Co. were the holders of record of 850 shares upon which they are liable to assessment. They have impleaded a number of persons against whom they ask judgment over.

The individuals composing the firm of Dixon & Co. were employees and agents of the Chatham-Phenix National Bank and Trust Company. They held the record title for the benefit of that bank, to which they had delivered the certificates indorsed in blank. The bank held the stock as collateral for loans made by it to the impleaded defendants. The bank was thus a pledgee and the impleaded defendants were the owners of the stock and were liable to Dixon & Co. for the assessments made against that firm, in the absence of special defenses.

Only one such special defense is presented. The impleaded defendant, Benjamin A. Levinson, shows that he was a member of the firm of Levinson Bros., which firm had pledged 450 shares of the stock here in question to the Chatham-Phenix Bank. In January, 1932, Levinson filed a voluntary petition in bankruptcy. In his schedules he listed the Chatham-Phenix Bank as a creditor for moneys lent and also listed the 450 shares as part of the securities held by it. In June, 1932, he was discharged from all debts and claims provable under the bankruptcy act. He had no knowledge that the stock in question had been transferred to Dixon & Co. of record and they were not scheduled as creditors. In fact he did not know of the existence of that firm and the firm had no knowledge

of the bankruptcy proceeding. He says that his liability to Dixon & Co. could have been proved in the bankruptcy proceeding under the decision in *Maynard* v. *Elliott* (283 U. S. 273) and other cases, and that Dixon & Co. must be deemed to have had notice of the proceeding because they were merely dummies for the Chatham-Phenix Bank, which was scheduled as a creditor. Assuming that Dixon & Co. had a claim which was susceptible of proof and liquidation in the bankruptcy proceedings, I cannot assent to the contention that they had notice of that proceeding. They were employees and agents of the Chatham-Phenix Bank. In the performance of their agency they incurred a personal liability by reason of the fact that they had recorded themselves as stockholders of the Bank of United States. That is what they were employed to do. Their employer incurred no such liability. It was not a stockholder within section 120 of the Banking Law. It could not have made any claim in the bankruptcy proceeding based upon such a liability even though Dixon & Co. might have been entitled to do so. Notice to an agent will often be equivalent to notice to his principal. But notice to a principal is not notice to his agent. Since, therefore, Dixon & Co. had no notice or knowledge of the bankruptcy proceeding, they were not discharged even though their claim may have been provable.

The result is that Dixon & Co. will have judgment as prayed for against all the defendants impleaded by them.

CLAIM OF SAM FINKELSTEIN AGAINST IMPLEADED DEFENDANTS.

Finkelstein was the record holder of 348 shares and is liable to plaintiff for the assessment against them. He impleaded the firm of B. H. Roth & Co., who are dealers in securities, alleging that he had sold and delivered 100 shares to them on December 10, 1930, and demanding judgment over against them as to those shares. Roth & Co. answered, admitting the sale and delivery to them on or about December tenth. They set up no defense to Finkelstein's claim, but impleaded the firm of Carroll, Riley & Duggan, and in their pleading directed against that firm alleged that on December tenth they had resold the 100 shares to them.

On the trial it was proved, as part of the case between Finkelstein and Roth, that Roth had resold the stock to the Carroll firm on December tenth and had delivered it on December eleventh. In the case between Roth and the Carroll firm the same facts were stipulated. Although the fact of this resale should probably have been pleaded by Roth as a defense in answer to the claim of Finkelstein, since the testimony was received in the presentation of the case between them without objection, I will deem the pleadings amended accordingly.

The result is to exonerate the firm of B. H. Roth & Co. since, when the bank closed, the Carroll firm were the real owners of the stock. They became the equitable owners when the sale was made to them on December tenth (*Currie* v. *White*, 45 N. Y. 822) and Finkelstein's claim should have been asserted against them (*Richards* v. *Robin, supra*).

The claim of Finkelstein against Roth & Co., and the claim of Roth & Co. against Carroll, Riley & Duggan, are, therefore, dismissed on the merits.

CLAIM OF JAMES P. WALSH AGAINST IMPLEADED DEFENDANTS.

Walsh was the owner of record of 410 shares. Of these, 100 shares were sold and delivered to the firm of J. J. Gunther & Co., dealers in securities, prior to the closing of the bank, and in March, 1931, they were resold by Gunther & Co. to Jean Kraft, who is the present owner. Walsh impleaded John J. Gunther and Herman A. Ried, as copartners doing business as J. J. Gunther & Co., but did not serve Gunther and Gunther did not appear in the action. He also impleaded Jean Kraft, the present owner. Walsh asks judgment against both Gunther and Ried on the theory that they were copartners and that service upon one of them entitles him to judgment and execution against the joint property. He also asks judgment against Kraft.

As to another fifty shares, of which Walsh was the record owner, he asks judgment against the impleaded defendant Jemelian, to whom he had sold and delivered the shares before the bank closed. This defendant did not appear or answer.

I am of the opinion that defendant Walsh is not entitled to judgment against the impleaded defendant Gunther. I do not consider that the claim against the partnership is " for a sum of money against two or more defendants alleged to be jointly indebted upon contract," as required by section 1197 of the Civil Practice Act. (See *Kittredge* v. *Grannis*, 244 N. Y. 182.) Besides, the action was severed on the trial as against Gunther.

As to the claims against Ried and Kraft, the question is which of them is to be considered the last owner within the meaning of the decision in *Richards* v. *Robin (supra)*. I think the proper view is that the owner at the time the bank closes cannot be allowed to get rid of his liability by a subsequent transfer of the stock. Any other holding would for practical purposes render the supposed right of the owner of record to go against the real owner purely illusory. It would open the door to transfers made to irresponsible persons after a bank fails for the purpose of escaping liability to the stockholder of record. Few people would desire in good faith to acquire

the stock of a closed bank, if they were to become liable for assessments. It was unnecessary in the *Robin* case to consider this point, since the transfers there under discussion had occurred before the closing of the bank. This leads to judgment in favor of Walsh against Ried and Jemelian, and in favor of Jean Kraft.

### CLAIM OF ESTATE OF SAMUEL MISEL AGAINST IMPLEADED DEFENDANTS.

Samuel Misel, since deceased, was recorded as the owner of 110 shares on the books of the bank. His estate is liable to the plaintiff for the assessment upon them. His executors brought in the firm of Gilbert Elliot & Co., dealers in securities, and assert a claim over against them. They, in turn, impleaded Clinton, Gilbert & Co.

On December 10, 1930, the 110 shares were sold by Misel to Gilbert Elliot & Co., who, on the same day, resold them to Clinton, Gilbert & Co. The result is that for reasons already discussed the claim of the Misel estate and the claim of Gilbert, Elliot & Co. must be dismissed on the merits.

### CLAIM OF WEISL & CO. AGAINST IMPLEADED DEFENDANTS.

Weisl & Co. were the holders of record of 350 shares upon which they are liable to assessment. They were stockbrokers and held these shares as collateral for accounts of two customers. In November, 1930, pursuant to the directions of their customers, one of the accounts, with its collateral, was turned over to Waterman, Bonn & Co. and the other to Richards & Co. These firms were also stockbrokers and continued to carry the accounts, and the collateral, until after the closing of the bank. The bank stock, indorsed in blank by Weisl & Co., remained of record in their name.

Weisl & Co. have impleaded the two other brokerage firms and ask judgment over against them upon the authority of *Richards v. Robin (supra)*.

I have already held, in connection with one of the claims discussed above, that the equitable owner at the time of the closing of the bank is the person to be held liable over to the stockholder of record. Here the stockbrokers were merely pledgees. Their customers were the owners of the stock. The claims of Weisl & Co. will, therefore, be dismissed on the merits.

### CLAIM OF WILFRED GREIF AGAINST IMPLEADED DEFENDANTS.

Greif was the record owner of 300 shares for the assessment upon which he is liable to plaintiff. He has impleaded numerous subsequent owners against whom he asks judgment over. The history of the transfers so far as material is as follows:

On December 10, 1930, Grief sold 100 shares to Orton. Orton later sold his 100 shares to Levy Bros. Levy Bros. resold to Doyle on December fifteenth. Thus the only persons who may have been the owners of the stock at the time the bank was closed were either Orton or Levy Bros. The action against Orton has been discontinued and Levy Bros. have not been served. Hence, Greif can have no recovery over in this action for the assessment against these shares.

On December 10, 1930, Greif sold his remaining 200 shares to Hoit, Rose & Troster, who were dealers in securities. Greif asks judgment over against them for the amount of the assessment on these shares. They claim that they resold these shares to Hill & Co. and Bittles & Co. on the same day, and should, therefore, be exonerated. But the trouble is that they have not shown that the stock sold by them to Hill & Co. and Bittles & Co. was the stock purchased from Greif. All they have shown is that on December tenth they sold 100 shares to Hill & Co. and 100 shares to Bittles & Co., and that on December eleventh and twelfth they delivered to them two certificates which they had received on December eleventh from Greif. They do not show that these 200 shares were the only shares of the stock dealt in by them on December tenth and that it was first purchased from Greif and then resold by them. So far as appears, the sales to Hill & Co. and Bittles & Co. may have preceded the purchases from Greif. At any rate, the evidence is insufficient to show that on December tenth they had parted with either legal or equitable title to the 200 shares purchased from Greif. Judgment will, therefore, go against them.

### CLAIM OF F. B. KEECH & CO. AGAINST ROSENTHAL.

Judgment is granted on default for $2,500, with interest and costs.

### CLAIM OF LEO DORFMAN AGAINST IMPLEADED DEFENDANTS.

Leo Dorfman was the owner of record of 148 shares upon which he is liable to assessment. He has impleaded Frank S. Demarest, against whom he asks judgment over as to 100 shares, and Pasquale Avalone & Stephano Niels, Inc., against which corporation he asks judgment over as to 25 shares.

Dorfman was the nominee of a firm of brokers and the stock in question was put in his name for their convenience. The 100 shares owned by Demarest were sold by him, through the brokers, on December tenth. He is, therefore, not liable.

The twenty-five shares were still owned by the impleaded corporation on December eleventh and it is, therefore, liable to Dorfman.

#### CLAIM OF ALEXANDER B. HALLIDAY AGAINST IMPLEADED DEFENDANT.

Halliday was the owner of 265 shares which he sold on December 10, 1930, to Lyon, Clokey & Co., against whom he asks judgment over. But he also pleads that they resold the identical stock on the same day. They are, therefore, not liable.

The requests for findings have been passed upon. Settle decision and judgment on notice.

(Supplemental opinion, July 21, 1933.)

LYDON, J. This opinion is intended as a statement of the grounds and reasons for various rulings made by me upon the trial, and should be considered as supplemental to the opinion handed down by me on July tenth last.

At the opening of the trial motions were made on behalf of the defendants to dismiss the complaint for lack of equity, and to transfer the action to the law side of the court, and that a jury be impaneled.

The complaint alleges that plaintiff, as Superintendent of Banks of the State of New York, pursuant to section 57 of the Banking Law, took possession of The Bank of United States, a domestic moneyed corporation, on December 11, 1930, on which date its capital amounted to $25,250,000, represented by 1,010,000 outstanding shares of the par value of $25 per share; that prior to May 6, 1931, plaintiff determined to liquidate its affairs and thereupon duly notified its creditors to present their claims on or prior to June 29, 1931; and subsequently upon examination of its affairs determined that the amount of the liabilities of such bank exceeded by $30,000,000, and upwards the reasonable value of its assets; that thereupon and prior to July 1, 1932, plaintiff determined that an assessment of $25 against each stockholder for each share of stock was required and necessary to provide moneys to discharge the claims of its creditors; and thereafter and on or about July 6, 1932, mailed a demand in writing requiring all stockholders appearing on the stock ledger of such bank to pay the respective amounts of their assessment on or prior to August 8, 1932. It is further alleged that each of the defendants was on or prior to December 11, 1930, and now appears on the stock ledger of said bank as the owner and holder of a number of shares and has been assessed the amount set opposite his name upon the schedule annexed to the complaint.

Judgment is demanded that the assessment as fixed, determined and levied by the Superintendent be adjudged valid and proper; that the defendants be required to pay the amounts of their respec-

tive assessments, together with interest from August 8, 1932, that a lien be impressed upon moneys and property of various of the defendants in the possession of the plaintiff, and that the proceeds of such property, as well as the moneys or such part thereof as may be necessary, be applied upon or set off against their assessments and the overplus rendered such defendants, and for other necessary relief.

The complaint alleges a cause of action which is properly maintained in equity. Both classically and historically the courts of this State from the earliest times have treated an action to enforce an assessment against stockholders as an action in equity, and have repeatedly sustained the propriety of the enforcement of that liability upon that side of the court. (*Matter of Empire City Bank*, 18 N. Y. 199; *Marshall* v. *Sherman*, 148 id. 9, 20; *Van Tuyl* v. *Scharmann*, 208 id. 53; *Mosler Safe Co.* v. *Guardian Trust Co.*, Id. 524; *Van Tuyl* v. *Sullivan*, 173 App. Div. 391; *Cheney* v. *Scharmann*, 145 id. 456; *Van Tuyl* v. *Kress*, 172 id. 563; *Richards* v. *Schwab*, 101 Misc. 128; *Richards* v. *Scharmann*, 97 id. 143.) The same rule prevails in other jurisdictions. (See *Alsop* v. *Conway*, 188 Fed. 568; *Barton National Bank* v. *Atkins*, 72 Vt. 33; *Rogers* v. *Selleck*, 117 Neb. 569; 221 N. W. 702; *Crease* v. *Babcock*, 51 Mass. [10 Metc.] 525; *Adams* v. *Carr*, 36 Colo. 65; *Atwood* v. *Bank*, 1 R. I. 376; *Trust Co.* v. *Loan Co.*, 92 Me. 444; *Rose* v. *Morrow*, 153 Tenn. 97; *Rehbein* v. *Rahr*, 109 Wis. 136; *Queenan* v. *Palmer*, 117 Ill. 619; *Northwestern Trust Co.* v. *Bradbury*, 117 Minn. 83; *Klotz* v. *Bank*, 78 Ind. App. 679; *Jones* v. *Jarman*, 34 Ark. 323; *Friend* v. *Powers*, 93 Ala. 114; *Bain* v. *Rogers*, 158 S. C. 417; *Finnel* v. *Bane*, 93 W. Va. 697; *Bank* v. *Bank*, 28 Wash. 553; *Springhor* v. *Dirks*, 72 Mont. 121.) Judicial ascertainment of the existence of the assessment liability requires investigation of the value of the assets of the bank and the amount and nature of its liabilities, followed by an apportionment of the deficit equally and ratably among the stockholders of the bank upon the basis of their respective stockholdings up to the par value of their stock.

Some of the reasons upon which the courts have proceeded in sustaining the jurisdiction of equity are that the liability itself constitutes a trust fund; that the suit brought for the collection of the assessment represents a step taken by the trustee for the enforcement of the trust and the realization of the moneys due for the benefit of the creditors standing in the position of *cestuis que trustent;* that the trust fund becomes subject to the general administration and supervision of the court (*Marshall* v. *Sherman*, 148 N. Y. 9, 21; *Hirshfeld* v. *Fitzgerald*, 157 id. 166; *Alsop* v. *Conway*, 188 Fed. 568); that in view of the manifold controversies presented,

equity may intervene to prevent a multiplicity of litigation (*Mosler Safe Co.* v. *Guardian Trust Co.*, 208 N. Y. 524; *Van Tuyl* v. *Kress*, 172 App. Div. 563), and generally that the character of the liability and the method of enforcement require the exercise of the broad and flexible powers residing in the equity branch of the court, in order that a complete, convenient and adequate remedy may be provided. (*Marshall* v. *Sherman*, 148 N. Y. 9, 21; Cheney v. *Scharmann*, 145 App. Div. 456.)

A motion was also made by the defendants for a dismissal of the action for defect of parties defendant. It is the contention of the defendant that where an action to enforce the assessment is maintained in equity, all stockholders must be joined as parties defendant. Aside from the effect of the failure of defendants to move within twenty days after the service of the complaint (Rules Civ. Prac. rules 102, 105; *Insurance Company* v. *Stoddard*, 211 App. Div. 132; *Day* v. *Mills*, 133 Misc. 220), section 80 of the Banking Law specifically provides: " The superintendent shall have a cause of action, in his own name as superintendent of banks, against such stockholder *either severally or jointly with other stockholders.*" It has been held repeatedly that under such statutory authority the action may be maintained against one, several or all of the stockholders (*Bottler Seal Co.* v. *Rainey*, 243 N. Y. 333; *Lang* v. *Lutz*, 180 id. 254; *Horowitz* v. *Winter*, 129 Misc. 814), either at law or in equity. (*Mosler Safe Co.* v. *Guardian Trust Co.*, 208 N. Y. 524; *Van Tuyl* v. *Schwab*, 172 App. Div. 670.)

Plaintiff offered in evidence a certificate of the amount of the deficit executed by the Superintendent of Banks pursuant to section 80 of the Banking Law. This certificate recited the determination of the Superintendent to levy the assessment and included a statement of the value of the assets and the amount of the liability of the bank and the then existing deficiency. The defendants objected to the admission in evidence of the certificate on the ground that the provisions of section 80, under which the facts stated in the certificate are made presumptive evidence, are unconstitutional. But it has always been within the legislative province to create rules of evidence and methods of proof applicable to the trial of judicial controversies, and moreover it is a familiar principle of common law that official statements made in the discharge of his duty by a public official are presumptive evidence of the facts therein contained. (*Richards* v. *Robin*, 178 App. Div. 535.) Section 80 of the Banking Law may be considered either as an exercise of this general power or merely as a statutory expression of this common-law rule.

Upon the introduction in evidence of the certificate of the Superintendent, the defendants asserted the right to call the

Superintendent of Banks for cross-examination, contending that the effect of the introduction of the certificate in evidence was precisely the same as if the Superintendent had been called in person as a witness and testified to the facts stated in the certificate. Under the statute, plaintiff is entitled to rest upon the certificate alone, and should not be required as part of his case to justify the facts therein stated. (*Marine Trust Co.* v. *Nuway Devices, Inc.,* 204 App. Div. 752.) To hold the contrary would clearly impair or destroy the presumption and circumvent the plain purpose of the statute. Any element of discretion that may have been involved in this ruling was resolved against the defendants upon the trial.

Upon examination by the defendants of the Superintendent of Banks, it was shown that in determining to levy the assessment and in executing the certificate, the Superintendent made no personal appraisal of the assets and liabilities of the bank, but relied upon reports made to him by members of his staff. The defendants contend that under section 80 of the Banking Law, such determination and certificate must be based upon his personal knowledge or investigation of the assets and liabilities of the bank. This contention must fail. It was the obvious design of section 80 that these duties of examination and investigation devolved upon the Banking Department, and might be properly delegated by the Superintendent to his subordinates. The duty of ultimate decision is vested in the Superintendent, but may be based upon the facts furnished to him by the employees delegated to perform such duties. This is not merely the convenient and practical construction of this section, but coincides with the language of the statute which provides generally that an examination and investigation must be made, but without placing the personal responsibility therefor upon the Superintendent, and that the determination by him should be based upon such investigation and examination. Moreover, in view of the broad and general powers and duties of the Superintendent as an officer exercising State-wide jurisdiction and supervision over banking and the liquidation of closed banks, it is unreasonable to assume that it was the intention of section 80 to place the discharge of this duty upon the Superintendent personally. (*Crane* v. *Nichols,* 1 F. [2d] 33; *Miller & Co.* v. *Boykin,* 70 Ala. 469; *Commercial Bank of Athens* v. *Blassingame,* 147 Ga. 636.)

While the question was not presented upon the trial, it would seem appropriate, in view of the large body of litigation pending and prospective involving the enforcement of assessments against bank stockholders, to state my views with respect to the effect

and weight to be given to the certificate provided for under section 80 of the Banking Law. It is my opinion that this certificate, in the absence of a showing of fraud, illegality, bad faith or obvious error, constitutes conclusive evidence of the facts therein stated. This is the rule of the Federal courts in actions to enforce the statutory liability of stockholders of national banks. (*Kennedy* v. *Gibson*, 8 Wall. 498; *Studebaker* v. *Perry*, 184 U. S. 258.) The National Banking Act (U. S. Code, tit. 12) contains no provision similar to that of section 80, and the rule applied in the Federal jurisdictions rests upon no positive statute but merely upon the presumption of good faith and regularity attending the performance of official acts. (*Isaac* v. *Marcus*, 258 N. Y. 257; *Matter of Broderick* [*Bank of Canastota*], 235 App. Div. 281; *Matter of Lunghino & Sons*, 176 id. 285.) There is neither logic nor reason in the principle that the certificate of the Superintendent may be overthrown upon the basis of mere differences of opinion between the Superintendent and the experts and witnesses of the defendants in relation to reasonable values. The determination of the Superintendent is essentially and peculiarly an administrative act resting upon the exercise of sound business judgment and discretion. (Banking Law, § 80; *Matter of Union Bank*, 176 App. Div. 477. If not infected with bad faith or obvious error, or violative of any fixed legal principle, it should not be subject to attack upon the theory that the preponderance of evidence, in the opinion of the trier of the facts, indicates that the values as fixed by the Superintendent are merely erroneous. Liquidation presupposes the prompt and speedy conversion of assets to cash in the interests of creditors, and the right to enforce and collect the assessment should not be subject to defeat by the mere balancing of the opposing opinions and views of expert witnesses upon the questions of reasonable values. If it should ultimately appear that the assessment was unnecessary in whole or in part, the stockholders are entitled to share in any remaining surplus. (Banking Law, § 79.) As between the stockholder and the creditor, it is the convenience of the latter that is preferred by the courts. Prior to the enactment of section 80, the Banking Law then in force contained no provision for the issuance of a certificate of deficit, but merely authorized the Superintendent, in general terms, to enforce the assessment when necessary. (Banking Law of 1909, § 19.) The construction of this latter section was presented in the case of *Cheney* v. *Scharmann* (145 App. Div. 456). It there appears that the Superintendent testified that he considered the levying of an assessment necessary. No other evidence supporting the necessity of the assessment was introduced. The sufficiency of this mere conclusion of the Superintendent as a proper legal

basis for the levy was attacked upon appeal, and it was there held that this unsupported declaration was insufficient as a matter of law. This case, therefore, is quite consistent with the views above expressed by me as to the effect of the certificate.

In the certificate of deficiency the Superintendent includes as a liability of the bank an item of $10,048,000, representing interest due to depositors from December 10, 1930, prior to the closing of the bank, to June 30, 1932, the day prior to his determination to enforce the assessment. Counsel for the defendants objected to the inclusion of this item as a liability of the bank in determining the amount of the deficiency. Interest, however, accrues upon the claims of creditors of the bank from the date of its suspension, and constitutes a valid obligation of the bank upon the basis of which its stockholders may be subjected to the statutory assessment liability. (*Mahoney* v. *Bernhardt*, 27 Misc. 339; affd., 45 App. Div. 499; affd., 169 N. Y. 589; *People* v. *Merchants' Trust Co.*, 187 id. 293; *Richards* v. *Scharmann*, 97 Misc. 143; *Parker* v. *Adams*, 38 id. 325; *Barnes* v. *Arnold*, 23 id. 197; affd.. 169 N. Y. 611; *Richmond* v. *Irons*, 121 U. S. 27.)

The defendants offered proof that in September of 1931 the Superintendent of Banks made a demand upon the stockholders of The Bank of United States that they pay on or before October 15, 1931, an assessment of the full par value of the outstanding stock of the bank; that subsequently, on July 1, 1932, the demand upon which this action is predicated was mailed to the stockholders of the bank. Testimony was introduced on behalf of the plaintiff showing that the first demand was revoked because of the lack of adequate proof of its mailing. The defendants contend that the first assessment notice, although subsequently revoked by the Superintendent, exhausted the power of the Superintendent to assess, and that the second assessment notice and demand upon which this action is based is a nullity. There can be no doubt that the Superintendent was empowered in the exercise of his administrative discretion to cancel the first demand and predicate the assessment upon the second (*Korbly* v. *Springfield Inst. for Savings*, 245 U. S. 330), and no proof was presented or claim made that this discretion was abused.

Various defendants have interposed affirmative defenses alleging that, although they appear on the stock ledger as the registered holders of shares of stock, they have no beneficial interest or ownership in such stock and were acting as mere nominees for the owners thereof, and are, therefore, not liable as stockholders upon the assessment. Section 120 of the Banking Law provides that all persons who appear as stockholders upon the stock ledger shall be liable upon the assessment, and this rule has been reiterated in

many authorities in this and other jurisdictions. (*Shellington* v. *Howland*, 53 N. Y. 371; *Rosevelt* v. *Brown*, 11 id. 148; *Adderly* v. *Storm*, 6 Hill, 624; *Van Tuyl* v. *Robin*, 160 App. Div. 41; *Richards* v. *Robin*, 178 id. 535; *Lewis* v. *Switz*, 74 Fed. 381; *American Trust Company* v. *Jenkins*, 193 N. C. 761; *Russell* v. *Easterbrook*, 71 Conn. 50; *McKim* v. *Glenn*, 66 Md. 479; *Sherwood* v. *Illinois Trust & Savings Bank*, 195 Ill. 112; *Baines* v. *Babcock*, 95 Cal. 581; *Kirschler* v. *Wainwright*, 255 Penn. St. 525; *Converse* v. *Paret*, 228 id. 156.)

Other defendants have alleged as affirmative defenses that, although they appear on the stock ledger as the registered holders of shares of the bank, they had sold such stock prior to the closing of the bank. The mere unrecorded sale of stock, however, is no defense to the enforcement of the assessment. (Banking Law, § 120; *Wheeler* v. *Werner*, 140 App. Div. 695; *Richards* v. *Robin*, 178 id. 535; *Skinner* v. *Schwab*, 188 id. 457; *Van Tuyl* v. *Robin*, 80 Misc. 360; *Knickerbocker Trust Co.* v. *Myers*, 133 Fed. 764; Fletcher Cyc. Corporations, § 5512. See notes 45 A. L. R. 99, 137; 55 id. 681.)

It is also alleged that various defendants sold their stock prior to the closing of the bank and that the certificates were presented to the transfer office of The Bank of United States for transfer upon the stock ledger subsequent to its closing by the Superintendent on December 11, 1930. The closing of the bank constitutes an automatic default in the payment by it of its obligations (*People* v. *Merchants' Trust Co.*, 187 N. Y. 293; *Sokoloff* v. *National City Bank*, 250 id. 69, 80, 81; *Richards* v. *Scharmann*, 97 Misc. 143), and under section 120 of the Banking Law, a demand for or the transfer of stock upon the stock ledger of the bank after its default is no defense to the enforcement of the assessment against the stockholder of record on the date of its closing.

It is also alleged as a defense to the action that the assessment was prematurely levied and the action prematurely instituted because there remain assets of the bank which have not as yet been converted into cash. Section 80 of the Banking Law authorizes enforcement of the assessment upon a determination by the Superintendent that the reasonable value of the assets of the bank is not sufficient to pay its creditors in full, and the right to levy and enforce the assessment is not conditioned by the statute upon the prior reduction of the assets to cash. (Banking Law, § 80; *Broderick* v. *Adamson* [*Rosen*], 146 Misc. 456; *Persons* v. *Gardiner*, 26 id. 663; affd., 42 App. Div. 490; *Richards* v. *Schwab*, 101 Misc. 128; *Richards* v. *Scharmann*, 97 id. 143; *Mahoney* v. *Bernhardt*, 27 id. 339; *Barnes* v. *Arnold*, 23 id. 197.) This is the uniform view of other jurisdictions. (*Kennedy* v. *Gibson*, 8 Wall. 498;

*Foster* v. *Broas*, 120 Mich. 1; *Pate* v. *The Bank of Newton*, 116 Miss. 666; *State ex rel. Stone* v. *Bank*, 103 Iowa, 549; *Booth* v. *Dear*, 96 Wis. 516; *Harris* v. *Taylor*, 148 Ga. 663; *Smathers* v. *Bank*, 135 N. C. 410; *Davis* v. *Johnson*, 41 N. D. 85; *Skarie* v. *Marron*, 78 Mont. 295; *Rohr* v. *Stanton*, Id. 494; *Fischer* v. *Chisolm*, 159 S. C. 395; *Andrew* v. *Bank*, 206 Iowa, 1070; *Maddison* v. *Bryan*, 31 N. M. 404; 247 Pac. 275; *Lynch* v. *Jacobson*, 55 Utah, 129; 184 Pac. 929.) If there is any surplus remaining after satisfying all demands of creditors, the stockholders will be entitled to its return *pro rata*. (Banking Law, § 79; *Persons* v. *Gardiner*, 26 Misc. 663.)

It is also alleged that the deficiency was caused by the misconduct and mismanagement of the directors and officers of the bank and that an assessment may not be levied upon the basis of a deficiency so caused. Article 8, section 7, of the Constitution of this State, and sections 80 and 120 of the Banking Law, constitute a contract voluntarily entered into by the stockholder upon his purchase of the stock of a banking corporation. (*Van Tuyl* v. *Schwab*, 174 App. Div. 665; affd., 220 N. Y. 661; *Howarth* v. *Angle*, 39 App. Div. 151; affd., 162 N. Y. 175.) Under these statutes, the obligation to pay the assessment arises without exception or limitation whenever a deficiency of assets of the bank makes it necessary to resort to the levy of an assessment. Moreover, the officers and directors of the bank, in their operation and control of its business, are the representatives of the stockholders. It is the stockholder who must assume the consequences of negligence, improvident or unlawful conduct of the directors and officers. (*Van Tuyl* v. *Robin*, 80 Misc. 360.)

The defense that the assessment may not be enforced because the deficiency was caused by misconduct of officers and directors which the Superintendent allegedly negligently failed to check or prevent, is also without merit. The Superintendent owes no private duty to individual stockholders. (*Walker* v. *Broderick*, 141 Misc. 391; *Hill* v. *Fidelity Co.*, 44 F. [2d] 624.) The statutory provisions above referred to and the voluntary assumption by the defendants of the status of stockholder with its attendant assessment liability whenever a deficiency exists, preclude the setting up of such a defense. (*Broderick* v. *Adamson* [*Rosen*], 146 Misc. 456.) Several of the defendants have asserted alleged negligence of the Superintendent prior to the suspension of the bank, not only as a defense to the action, but also as a counterclaim and setoff. A claim against the Superintendent for negligence may not be asserted in this action maintained by him in a fiduciary capacity on behalf of creditors. (*United States Trust Co.* v. *Stanton*, 139 N. Y. 531; *Central Trust Co.* v. *Weeks*, 15 App. Div. 598.)

The contention of defendants that sections 80 and 120 of the Banking Law are unconstitutional is likewise overruled. The Constitution of this State, article 8, section 7, specifically creates the additional assessment liability of stockholders, leaving to the Legislature the enactment of appropriate methods of enforcement, now reflected in the provisions of the Banking Law, which are not open to constitutional objection. (*Van Tuyl* v. *Sullivan*, 173 App. Div. 391; affd., 217 N. Y. 691; *Richards* v. *Schwab*, 101 Misc. 128.)

Several defendants have alleged as affirmative defenses that the bank, through its officers and agents, by misrepresentations and fraud, induced them to purchase their stock. But equities between the stockholder and the bank may not impair the rights of creditors to enforce the assessment. The sole recourse of the stockholder is against the bank, and he may not, in a proceeding of this character, assert private claims subsisting between himself and the bank with relation to his stock as a defense to the enforcement of the assessment. This conclusion has been reached in many jurisdictions. (*Scott* v. *De Weese*, 181 U. S. 202; *Commissioner of Banks* v. *Cosmopolitan Trust Co.*, 253 Mass. 205; *Bundy* v. *Wilson*, 66 Colo. 253; *Duke* v. *Johnson*, 123 Wash. 43; *Chapman* v. *Harris*, [Tex. Civ. App.] 275 S. W. 75; *Bissel* v. *Heath*, 98 Mich. 472; *Foster* v. *Rowe*, 120 id. 1; *Bartlett* v. *Stephens*, 137 Minn. 213; *Oakes* v. *Turquand*, L. R. 2 H. L. 325; *Ryan* v. *Mt. Vernon Nat. Bank*, 224 Fed. 429; *Lantry* v. *Wallace*, 97 id. 865; *Wallace* v. *Hood*, 89 id. 11.)

Other defendants have pleaded as a defense and counterclaim that the stock registered in their names was sold to them by The Bank of United States under an agreement that such stock would be repurchased on demand under stated conditions, and that the bank wrongfully refused to purchase the stock, after proper tender. Such agreements are illegal and unenforcible under section 108 of the Banking Law. (*Norwalk* v. *Marcus*, 235 App. Div. 211; affd., without opinion, 261 N. Y. 615.) In addition, the identical considerations discussed above in connection with the defenses of fraud are controlling. Equities between the bank and its stockholders cannot prejudice its creditors when resort to the assessment is necessary. (*Commissioner of Banks* v. *Cosmopolitan Trust Co.*, 253 Mass. 205.) Moreover, a sale to the bank itself cannot relieve the transferor of liability upon the assessment. The purchaser must be one who succeeds to a present liability distinct from and additional to the liability of the bank. (*Matter of Reciprocity Bank*, 22 N. Y. 9; *Shellington* v. *Howland*, 53 id. 371.) In addition, the counterclaims and setoffs asserted against the bank must be dismissed because a claim against the bank may not be asserted in this action brought by the Superintendent on behalf of creditors

to enforce the assessment. (*Van Tuyl* v. *Schwab*, 165 App. Div. 412; *Richards* v. *Schwab*, 101 Misc. 128; *Broderick* v. *Adamson* [*Shapiro*], 146 id. 414.)

The attorneys for the defendants Alexander Halliday, Wilfrid Greif and Hoit, Rose & Troster requested permission to withdraw findings submitted, and such request was granted and new findings presented and passed upon.

The original findings dismissing the cross-complaint of the defendant Halliday against Lyon, Clokey & Co. upon the pleadings are withdrawn. Upon consideration of the record I find that the cross-complaint of the defendant Halliday was amended upon the trial so as to eliminate certain allegations which made the cross-complaint subject · to dismissal upon its face. Upon the facts, however, I find that the cross-claim must be dismissed upon the merits, since the impleaded defendant Lyon, Clokey & Co. disposed of its equitable interest in the stock purchased from the defendant Halliday prior to the closing of the bank.

The trial of the cross-claim of defendant Wilfrid Greif against Hoit, Rose & Troster was reopened by me and additional evidence submitted which established that on the 10th day of August, 1930, Hoit, Rose & Troster had disposed of all of its holdings of The Bank of United States stock prior to the closing of the bank, and was actually short thirty-six shares. In view of this situation, the cross-complaint of the defendant Wilfrid Greif must be dismissed upon the merits.

My attention has been called by the attorneys for the defendant Benjamin A. Levinson, against whom a cross-claim is asserted by the defendant Dixon & Co., to a number of authorities which hold in substance that a bankrupt who files a petition enumerating his creditors is not obliged to name an unknown assignee of a claim, and it is, therefore, contended that the notice given by the defendant Levinson to the Chatham-Phenix National Bank, his immediate creditor, and for whom Dixon & Co., the holder of record, acted as nominee, was sufficient to discharge the claim in bankruptcy. The difficulty with this contention is that the petition in bankruptcy was filed by Levinson in January of 1932, and that the assessment was levied and demand made by the Superintendent on July 1, 1932. At the time of the filing of the petition in bankruptcy, no determination to assess had been made by the Superintendent, and whether an assessment would be imposed was purely speculative and necessarily entirely unknown to the parties to this controversy. My original decision holding the defendant Benjamin A. Levinson liable is adhered to.

As to the last three claims discussed, my original opinion will be deemed amended to conform to the views herein expressed.