JOSEPH A. BRODERICK, as Superintendent of Banks of the State of New York, Plaintiff, *v.* ROBERT ADAMSON (ANDREW J. DINNEN) and Others, Defendants.

Supreme Court, Special Term, New York County, June 1, 1936.

*Carl J. Austrian [Harold N. Cohen* and *Suzanne Cohen* of counsel], for the plaintiff.

*Albert B. Brewlow,* for the defendant Dinnen.

SHIENTAG, J. This is an action to recover an assessment levied against Andrew J. Dinnen as a stockholder of the Bank of United States. The action, when originally tried, resulted in the entry of a judgment in favor of the Superintendent of Banks against the defendant as a stockholder of 111 shares of the capital stock of the bank. This judgment was affirmed by the Appellate Division without opinion (*Broderick* v. *Adamson,* 148 Misc. 353; affd., 243 App. Div. 692). Thereafter the defendant Dinnen moved for a new trial on the ground of newly-discovered evidence, which motion was granted. In effect, the motion was granted in the interest of justice and in order to secure uniformity in the rules applicable to the assessment of stockholders of the bank.

The defendant was a nominee of Richards & Co., stockbrokers. On December 1, 1930, acting in his capacity as nominee, Dinnen caused three shares of the capital stock of the bank to be issued to him. Thereafter, and sometime prior to December 10, 1930, Dinnen was instructed to pick up 111 shares of Bank of United States stock, inclusive of the three he already had, for the account of a customer of his principal, Richards & Co., and to have the shares transferred into his name.

During the day of December 10, 1930, some time after twelve o'clock noon and prior to two-thirty P. M., Dinnen caused the certificates he had picked up to be delivered, in two batches, to the stock transfer office of the Bank of United States for transfer into his name. These certificates were accepted by the clerk at the window of the stock transfer office prior to two-thirty P. M., and he issued delivery tickets for the two·batches of certificates.

All certificates received before two-thirty P. M. of a given day are started through the process of transfer on that very day and the usual transfer procedure of the bank is followed. If there is to be a departure from the ordinary routine, the certificates are marked as " specials." Defendant testified that there was no request to have these certificates so marked, and no evidence was adduced to show that they were in fact so treated. The evidence, indeed, is to the effect that the procedure that would ordinarily be used for " special " cases was not used here, and that the certificates followed the ordinary transfer routine that the bank customarily employed.

On December eleventh, some time prior to nine A. M., the Bank of United States was closed by order of the Superintendent of Banks. During the period between December 10 and December 18, 1930, Dinnen called the stock transfer office of the bank from day to day. He asked for the delivery of the new certificates and was advised that in view of the closing, the question of whether the transfer would be completed and the new certificates issued had been submitted to the legal department for an opinion, and that no final action had as yet been taken. On December 18, 1930, he was advised that the new certificates were ready for issuance, and thereupon a messenger of Richards & Co. called at the stock transfer office of the Bank of United States, presented the tickets at the window, and received delivery of the new certificates in the name of Dinnen. These window tickets bear a stamped date December 18, 1930, which indicates the date of delivery of the new certificates to the messenger of Richards & Co.

The legal question involved is whether the transfer of the certificates into Dinnen's name was so far completed before the closing of the bank on December eleventh that he can be considered a stockholder prior to that time for the purpose of assessment.

. The decisions of the Court of Appeals in the cases of *Broderick* v. *Aaron* (*Kornberg*) (268 N. Y. 260) and *Broderick* v. *Aaron* (*Kessler*) (Id. 411) establish certain propositions of law which govern and control the present litigation. It is clear from these decisions that (1) to terminate the assessment liability of a stockholder of record, he must cause his stock to be transferred upon

the books of the bank prior to its closing; (2) mere presentation of the stock for transfer, even though regular in every respect, is not of itself sufficient to terminate the assessment liability; (3) to terminate the assessment liability, the stockholder of record must make a presentation for transfer which is timely, and if the presentation for transfer is not in time to allow the bank, pursuant to the regular business routine of its stock transfer office, to complete the transfer and post appropriate entries upon its books prior to its closing, the transferor remains liable; (4) if the presentation for transfer is timely, and the failure to consummate the transfer by appropriate entries upon the books of the bank is due to neglect or wrongdoing on the part of the bank, the transferor is relieved from liability despite the non-completion of the transfer, in which event it appears that the transferee becomes liable as a stockholder of record; and (5) no person becoming stockholder of record or owner after the closing of the bank is liable.

The *Kessler* case is especially pertinent. There the transferors delivered certain certificates to a branch office of the Bank of United States on December 9, 1930, for transfer out of their names. The certificates never reached the stock transfer office. The bank was negligent in failing to send the certificates to the transfer office the day following their receipt at the branch office. Despite this, however, it was held that the transfer failed of accomplishment, because even if the certificates had been sent to the stock transfer office on December tenth, the transfer, following the ordinary routine of the bank, would not have been completed until after the closing of the bank. " Failure to have the stock certificates transferred on the books of the bank was not due to any neglect of the bank, but to the failure of the defendants to present the stock for transfer in time to complete the transfer on the books of the bank before the bank was closed." (*Broderick* v. *Aaron* (*Kessler*), *supra*, at p. 416.) The court found that in the ordinary course of business the certificates would have reached the stock transfer office on December tenth, that during the course of that day new certificates would be drawn and at the close of the business day signed by the authorized officer of the bank. But, the court pointed out, " more remained to be done before the transfer could be made upon the books of the bank for each certificate bore on its face a provision that ' This certificate is not valid until registered by the registrar. Registered: The Chase National Bank of the City of New York, Registrar. By......................, Assistant Cashier.' In accordance with the usual routine of the bank new certificates which had been signed by the authorized

officer of the bank would be delivered on the following day [December 11] by the bank to the Chase National Bank as registrar and only after authentication by it would the stock be ready for transfer on the same day upon the stock ledger of the bank. Even if the officers of the bank had transmitted the defendants' stock certificates to the transfer office in accordance with their usual course of business, the transfer would not have been completed in accordance with its business routine till December 11th and at that time the bank was closed." (*Broderick* v. *Aaron* [*Kessler*], *supra*, at p. 415.)

The plaintiff, to escape the effect of the *Kessler* case, argues that the Court of Appeals in that case did not have before it a complete description of the transfer routine of the bank; that more particularly the record there was silent with respect to the procedure in connection with what is known as the transfer sheet. Therefore, plaintiff contends, the Court of Appeals could not have passed on the effect of the entries on that sheet, which it is urged are legally sufficient to accomplish the transfer. In other words, plaintiff argues that what the Court of Appeals said about the necessity of the registration of the certificates before the process of transfer could be deemed to have been completed, should be disregarded in the light of the additional evidence in the case to which reference has been made.

The transfer sheet is an intermediate record, prepared as a step in the transfer routine. After the certificates are presented for transfer and after the window man has performed the preliminary functions of examination, acceptance, cancellation of revenue stamps, and issuance of window tickets, the old certificates are given to a " make-up " man. He cancels the old certificates and prepares the new. The certificates, both old and new, then go to a machine operator. This operator inserts the name of the transferee on the new certificate, and at the same time, by the use of carbons, causes the name of the transferee to be inserted upon the sheet known as the transfer sheet. This sheet reflects the window ticket number, the name of the transferor, the numbers and denominations of the old certificates, the name and address of the transferee, and the numbers and denominations of the new certificates. It would be dated as of the day of its preparation (the date of presentation for transfer), and would be prepared in quadruplicate. It would be prepared without any particular sequence being followed, either alphabetical or numerical. The new certificates would then be signed by duly authorized officers of the bank. All this would be done before the close of the day on which the certificates were received and accepted for transfer at the stock transfer office. The old and new certificates would

then be placed in the vault overnight, and the next morning the process of transfer would be completed.

The transfer sheet was subject to correction by the employees upon their recheck of the day's work, by the officers of the bank on the affixation of their signatures to the new certificates some time during the day, and by the registrar on the authentication of the new certificates on the following day. It was prepared before the new certificates were completed, either by signature by the officers of the bank or authentication by the registrar.

In the ordinary course of business, at the close of the day on which certificates were presented for transfer, two main things would remain to be done: the registration of the certificates by the Chase National Bank, and the entry of the transfer on the stock book of the Bank of United States. Consequently, on the morning of the following day, the transfer sheet, so far used only for checking purposes, would be taken up by the bookkeepers in charge of posting the entries in the stock book of the bank. At the same time, the new and the old certificates would be sent to the registrar for registration. One of the copies of the transfer sheet was perforated so that it could be torn apart and the separate slip thus obtained would recite the particular transfer out of the name of the transferor and into the name of the transferee. On receipt of the original and all copies of the transfer sheet, the bookkeepers would tear the perforated copy, thus obtaining posting tabs. Entries were posted in the stock book from these tabs, and were then checked back against the transfer sheet. The tabs would then be inserted in the stock book, in accordance with the alphabetical arrangement of the book.

The work of posting entries in the stock book would continue throughout the morning, until about one P. M. The certificates which had been sent to the registrar that morning would have been returned between eleven-thirty A. M. and twelve noon. When completed, the stock books would be locked and placed in the vault. After the work on the stock book was completed, one copy of the transfer sheet would be placed in a permanent binder, and the other copies distributed to various divisions of the bank.

There is some dispute in the evidence as to what actually happened to the particular certificates in suit. The testimony of the witnesses for the plaintiff is to the effect that at the close of business on December tenth the new and old certificates, not yet registered or entered in the stock book, were placed in the vault of the bank. Some time prior to the opening of business on December eleventh the vault was sealed by the order of the Superintendent of Banks, preventing the certificates from following the routine procedure and being sent to the registrar. About

December thirteenth the legal department decided that the transfer of the certificates presented on December tenth should be completed. They were thereupon taken from the vault, sent to the registrar for registration, and entered upon the stock book of the Bank of United States. The stock book carries the date December tenth, which, plaintiff's witnesses testified, is the date of presentation for transfer and not the actual date of entry in the stock book. That was the manner in which the stock book was ordinarily dated.

Opposed to this testimony is that of some employees of the Chase National Bank. They testified that the date of registration appearing on their records is December tenth, and that it was customary for the registrar to date its books as of the date of registration, and not as of the date of presentation for transfer. They had no personal record of this transaction, but assumed from the date appearing on their books that these certificates were registered on December tenth. Their records, indeed, indicate that no registration of stock whatsoever took place after the closing of the bank, though the date December tenth appears on registration sheets covering two days' transfers of stock.

This conflict is unsubstantial rather than real. Ordinarily the records would govern. But to take them at their face value would be to do violence to the physical facts. The certificates in controversy, beyond any doubt, were sealed in the vaults of the bank and could not have been delivered for registration until some time after December thirteenth. From the testimony of plaintiff's witnesses themselves, it is clear that the Chase National Bank deviated from its ordinary routine in dating this particular registration, and used the same date that the Bank of United States employed on its stock book rather than the actual date of registration. The Chase National Bank used this date not only for the registration of certificates presented at the Bank of United States for transfer on December ninth, but also for those presented on December tenth.

I am of the opinion that the entries on the transfer sheet were insufficient to constitute the defendant a stockholder prior to the closing of the bank for purposes of assessment. The Stock Corporation Law, which applies to banking or moneyed corporations (*Strahmann* v. *Yorkville Bank*, 148 App. Div. 8; affd., 210 N. Y. 536), provides that "Every stock corporation shall keep at its office * * * a book to be known as the stock book, containing the names, alphabetically arranged, of all persons who are stockholders of the corporation, showing their places of residence, the number of shares of stock held by them respectively, the time

when they respectively became the owners thereof * * *. No transfer of stock shall be valid as against the corporation, its stockholders and creditors * * * until it shall have been entered in such book as required by this section, by an entry showing from and to whom transferred." (§ 10.)

The Banking Law makes no provision for the keeping of any specific book of this kind by a banking corporation. Section 120, after providing that the rights, powers and duties of stockholders shall be prescribed in the General Corporation Law and the Stock Corporation Law, though the stockholders' individual liability is to be governed exclusively by sections 80 and 120 of the Banking Law, goes on to provide that the term " stockholder " shall apply to persons who appear " by the books of the bank " to be stockholders and that it shall be necessary to cause the stock to be transferred in good faith " on the books of the bank," under certain conditions mentioned in the section, to escape an assessment.

Plaintiff argues that section 120 of the Banking Law is broader than section 10 of the Stock Corporation Law, and does not provide that a transfer on the stock book of the bank is essential, but that the transfer on any regular book is sufficient. From this it is argued that an entry indicating a transfer on any record of the bank, such as the transfer sheet, is sufficient compliance with section 120 of the Banking Law.

Section 120 standing alone is ambiguous. The term " books of the bank " is uncertain since no provision of the Banking Law prescribes the maintenance of any particular books by a bank showing stock transfers. Section 6 of the General Corporation Law provides that " If there be in any other corporate law a provision relating to a matter embraced in this chapter or in the Stock Corporation Law, but not in conflict therewith, both provisions shall apply." It seems clear, therefore, that the ambiguity in section 120 is to be resolved by reading it in conjunction with section 10 of the Stock Corporation Law. When the provisions are so read together it is evident that the term " books of the bank " means the stock books of the bank.

Even assuming, however, that section 120 stands alone with its broader language, it provides for a transfer on a " book " of the bank. At the very least this means a permanent accurate record. As has been pointed out, the transfer sheet was a mere intermediate entry, subject to correction at all times till posting in the stock book was complete. Only after the work on the stock book was finished was the transfer sheet put in a permanent binder to become a record of the bank. Not till then did it reflect an accurate and complete transaction. In this case, the transfer

sheet became a permanent record of the bank only after it had closed.

Beyond this, the rule laid down by the Court of Appeals in the *Kessler* case appears to be controlling. The language used is clear and unambiguous. " A stockholder of record has not ' caused his stock to be transferred on the books of the bank ' until he has requested transfer of the stock, and at least a reasonable time has elapsed to enable the bank in accordance with established and reasonable routine to act upon the request " (p. 416). Part of the established and reasonable routine was the registration of the new certificates and the simultaneous entry on the stock ledger of the bank. The transfer was not complete until those steps were taken. Registration was a condition precedent to the validity of the new certificates. Until registration was accomplished and the transfer completed, no change was worked in the stockholder's status. That being so, the fact that the record in the *Kessler* case failed to disclose the procedure in connection with entries on the transfer sheet can make no difference in the legal result.

Though the defendant is relieved from liability on the stock which was registered after the bank closed, he remains liable for those shares which had been completely transferred prior to the bank's closing. He is, therefore, subject to assessment on the three shares which had been issued to him on December 1, 1930.

Submit findings of fact, conclusions of law and judgment in accordance with the foregoing opinion, on notice. No costs will be allowed to either party.